(263 P.3d 791)
No. 104,965

ARTIS SWAFFORD, *Appellant*, v. DAVID MCKUNE, *Appellee*.

Opinion filed August 26, 2011.

*Rhonda K. Levinson*, of Levinson & Levinson PA, of Basehor, for appellant.

*Matthew J. Donnelly*, legal counsel, Lansing Correction Facility, for appellee.

Before GREENE, C.J., MALONE and BRUNS, JJ.

BRUNS, J.: Artis Swafford, an inmate at Lansing Correctional Facility (LCF), appeals the district court's denial of his K.S.A. 60-1501 petition. He contends that his due process rights were vio-

lated during the course of a prison disciplinary proceeding. For the reasons set forth below, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Swafford was accused of lewd acts and misconduct with a female visitor in a visiting room at LCF on July 26, 2009. The incident was witnessed by two prison officers who were viewing monitors displaying images from the visiting room. In the disciplinary report, which was served on the same date, Swafford was charged with "reach[ing] his hand into his visitor's shirt sleeve to fondle her right breast" in violation of K.A.R. 44-12-315 and K.A.R. 44-12-321.

Prior to the disciplinary hearing, Swafford moved to dismiss the charges set forth in the disciplinary report. The motion was denied and the matter proceeded to hearing. In addition, Swafford filed an "Inmate Request for Witness" on July 29, 2009, in which he requested certain documents.

The disciplinary hearing began on August 3, 2009, and the hearing officer denied Swafford's request for documents. The hearing officer did, however, grant Swafford a continuance so that he would have the opportunity to request the video from the surveillance camera. Two days later, on August 5, 2009, Swafford filed a second "Inmate Request for Witness," seeking:

"Video or digital description of the alleged violation of law or rule, from the medium visiting room, as is described in disciplinary report #258. Requesting to be allowed to personally review the video during the hearing, or have the hearing officer review the video outside of my presence during the hearing and be provided a summary of the content of the video, so that questions and follow-up questions may be asked."

The following day, Swafford filed another request asking that the video be made available for the hearing, which was scheduled to resume at 1 p.m. on August 10, 2009.

At the disciplinary hearing, Swafford testified on his own behalf, but he did not challenge the sufficiency of the evidence against him, nor did he present any documentary evidence. Rather, Swafford argued that he had not been adequately informed of the charges against him because reaching under his visitor's sleeve "to

fondle" her breast, as alleged in the disciplinary report, was substantially different from actually fondling her breast.

Officer E. Zamora, who had written the disciplinary report on July 26, 2009, testified that he "witnessed [Swafford's] hand go up [the visitor's] shirt and he was fondling her breast." Likewise, Officer Jenkins testified that he was watching the visiting room on the monitor and also saw Swafford "put his hand up [the visitor's sleeve], reach up, and touch her breast." Although Swafford had the opportunity to cross-examine the officers, it appears from the record that he did not do so.

At the conclusion of the disciplinary hearing, Swafford was found by the hearing officer to be guilty of violating K.A.R. 44-12-315 and K.A.R. 44-12-321. A $20 fine was imposed in addition to other sanctions. In a written decision, the hearing officer explained that his findings and conclusions were "[b]ased on the facts provided by video evidence that clearly shows inmate Swafford['s] hand go into his visitor['s] sleeve" and "upon having [his] hand in her shirt[,] it is clear also . . . that inmate Swafford was fondling his visitor['s] breast." The hearing officer further explained that the testimony of Officer Zamora also "made it clear that inmate Swafford was fondling the breast of his visitor."

On August 14, 2009, the hearing officer's decision was approved by the warden. On appeal to the Secretary of Corrections the finding of a violation of K.A.R. 44-12-315 was approved and the finding of a violation of K.A.R. 44-12-321 was disapproved. On December 3, 2009, Swafford filed a petition in district court pursuant to K.S.A. 60-1501. The K.S.A. 60-1501 action was initially dismissed for failure to exhaust administrative remedies. It was later reinstated, and Swafford filed an amended petition alleging various due process violations.

On April 6, 2010, the district court held an evidentiary hearing on the amended petition. At the hearing, Swafford testified that he believed that there was not a "sufficient charge" asserted against him and that he had not been given an adequate opportunity to present "documentary evidence" during the disciplinary proceeding. Swafford argued that he should have been allowed to see the

security video, and he claimed that the hearing officer had never reviewed the videotape.

On April 26, 2010, the district court entered a memorandum decision in which it denied the K.S.A. 60-1501 petition and dismissed the case. In doing so, the district court found:

"[T]he appellate courts of Kansas have directed that the procedure to be followed by the hearing examiner during disciplinary hearings, as well as the general rule, [is] that prison officials are given flexibility in executing internal prison policies and procedures. *Anderson v. McKune*, 23 Kan. App. 2d 803, 937 P.2d 16 (1997). K.A.R. 44-13-403 directs the hearing officer, to the extent possible, discover the truth regarding charges against the inmate. If the hearing officer decides to review security video, . . . 'the inmate shall not be present when the hearing officer reviews any facility security videotape evidence.' Further that regulation permits the hearing officer to bring out the facts by direct or cross-examination."

The district court concluded that the State had met the "some evidence" standard for prison disciplinary proceedings set forth in *Sammons v. Simmons*, 267 Kan. 155, 158-159, 976 P.2d 505 (1999). The district court also found that "[t]he testimony bore out that there was actual touching" of the visitor's breast in violation of the lewd acts regulation. Thus, the district court denied the K.S.A. 60-1501 petition, and Swafford timely appealed to this court.

### ISSUE PRESENTED AND STANDARD OF REVIEW

On appeal, the issue presented is whether Swafford's procedural due process rights were violated during the course of the prison disciplinary proceeding. The question of whether due process under the Fourteenth Amendment to the United States Constitution exists in a particular case is a question of law. See *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, Syl. ¶ 4, 24 P.3d 128 (2001).

### *Due Process Requirements*

An appellate court gives broad deference to prison officials in maintaining discipline in prison settings. See *Anderson v. McKune*, 23 Kan. App. 2d 803, 809, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997). Although there must be mutual accommodation between the institutional needs of prisons and the rights of prisoners in disciplinary proceedings, the full panoply of

rights due a defendant in a criminal proceeding does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

In prison disciplinary proceedings, officials must follow certain due process procedures, including a written notice of the charges to enable inmates to prepare a defense, an impartial hearing, the opportunity to call witnesses and present documentary evidence, and a written statement from the hearing officer as to the findings and the reasons for the decision. *Pierpoint*, 271 Kan. at 627-28; see *Washington v. Roberts*, 37 Kan. App. 2d 237, Syl. ¶ 3, 152 P.3d 660 (2007).

## APPLICATION OF DUE PROCESS REQUIREMENTS

*Adequacy of the Notice of Charges*

A review of the disciplinary report served on July 26, 2009, reveals that it clearly identifies the regulations which Swafford was accused of violating. Likewise, it concisely summarizes the facts alleged by the prison officers in support of the charges. The disciplinary report also includes a summary of what the officers claimed to have seen on the surveillance camera located in the visiting room. Thus, we find that the disciplinary report gave Swafford adequate notice of the nature of the charges so that he could prepare a defense.

*Impartial Hearing*

Although Swafford contends that the hearing officer was not an impartial fact finder, he has offered nothing but his own self-serving testimony in support of this allegation. From a review of the record, we find no evidence of bias or prejudice on the part of the hearing officer. In fact, the record reflects that the hearing officer was very lenient in granting Swafford's request for a continuance after the disciplinary hearing began in order to give him an opportunity to make a request for the videotape. Thus, we find that Swafford received a fair and impartial hearing.

*Opportunity to Call Witnesses and Present Documentary Evidence*

The record reflects that Swafford had the opportunity to call witnesses and present documentary evidence at the disciplinary

hearing. Although it appears that he did not take advantage of the opportunity, Swafford could have cross-examined both of the officers who claimed to have seen him fondle the breast of a female visitor. It is also important to recognize that Swafford submitted two "Inmate Request for Witness" forms, but both of the forms were submitted more than 48 hours after he was served with the disciplinary report. As such, the "Inmate Request for Witness" forms were untimely pursuant to K.A.R. 44-13-306.

Swafford contends that the hearing officer did not review the security video. In explaining the reasons for his decision, however, the hearing officer explicitly stated that "[b]ased *on the facts provided by video evidence that clearly shows* inmate Swafford['s] hand go into his visitor['s] sleeve . . . it is clear also by evidence that inmate Swafford was fondling his visitor['s] breast." (Emphasis added.) Hence, a fair reading of the hearing officer's decision leads us to the conclusion that he did review the security video prior to making his final determination.

Pursuant to K.A.R. 44-13-403(l)(1), "the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence." Although the dissent believes that prison security videos should be made generally available to inmates in prison disciplinary proceedings, Swafford does not challenge the constitutionality of K.A.R. 44-13-403(l)(1). In fact, he requested that the security video either be produced to him or viewed by the hearing officer outside his presence. Because we find that the hearing officer reviewed the security video, we conclude that Swafford's due process right to present documentary evidence was adequately protected.

The dissent cites *Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007), for the proposition that a prison official's refusal to produce a potentially exculpatory videotape violates an inmate's due process right to present documentary evidence in a disciplinary hearing. A review of the *Howard* decision reveals that it is distinguishable from the present case in that the hearing officer refused to consider the security video, which purportedly showed that an inmate had acted in self-defense in fighting with another inmate. Moreover, in *Howard*, there was not a

regulation in place similar to K.A.R. 44-13-403(l)(1), authorizing that a security video be reviewed outside the presence of the inmate.

As the dissent candidly admits, federal courts are not in agreement on this issue. For example, the Seventh Circuit recently held in *Estrada v. Holinka*, No. 10-3313, 2011 WL 1740118, at *2 (7th Cir. 2011) (unpublished opinion), that it was not a violation of an inmate's due process rights to be denied the opportunity to view a surveillance video in a prison disciplinary proceeding. See *Alexander v. Schleder*, 790 F. Supp. 2d 1179, 1187 (E.D. Cal. 2011) (An inmate's due process rights were not violated where hearing officer relied on prison officer's "statement regarding his summary of the contents of the videotape evidence."); see also *Carter v. Lawler*, No. 4:10-CV-01266, 2011 WL 2462016, at *11 (M.D. Pa. 2011) ("[B]ecause disciplinary officials are entitled to rely upon staff members' descriptions of video evidence, the decision of the [hearing officer] not to view the video evidence does not amount to a violation of due process.").

Although we agree with the dissent that it would be worthwhile for the Secretary of Corrections to review the existing regulations to determine if new procedures for requesting and presenting documentary evidence should be implemented, we do not agree that due process requires that prison security videos be made available to inmates who are the subjects of prison disciplinary proceedings. Thus, we find that Swafford was provided with a reasonable opportunity to cross-examine the witnesses who brought the charges against him, to call witnesses on his own behalf, and to present documentary evidence at the disciplinary hearing.

### Written Findings and Reasons for the Decision

At the conclusion of the disciplinary hearing, a written decision was prepared by the hearing officer and was provided to Swafford. The decision included the hearing officer's factual findings and stated the reasons for his decision. It also summarized the testimony given by Swafford and the two prison officers who witnessed the alleged infractions on July 26, 2009. Moreover, it described what was observed on the security video. Thus, we find that the

hearing officer provided Swafford with written findings and the reasons for his decision.

## CONCLUSION

We conclude that Swafford was provided with all of the due process protections required by the Fourth Amendment to the United States Constitution. We also conclude that in a prison disciplinary proceeding, an inmate does not have the right to be present when the hearing officer views a security video. Finally, we conclude that the district court was correct in finding that there was sufficient evidence in the record to support the determination that Swafford violated K.A.R. 44-12-315.

Affirmed.

\* \* \*

GREENE, C.J., dissenting: I respectfully disagree with my colleagues, who conclude that Swafford was not denied due process in his prison disciplinary proceeding. I believe that fundamental due process requires that a prison security video of the incident giving rise to the disciplinary report should generally be available to the inmate—subject only to reasonable security concerns, and its unavailability to Swafford here has revealed that the applicable regulations are inadequate and do not comport with due process principles that our appellate courts have consistently required in such proceedings. Moreover, the majority's emphasis on the sufficiency of evidence is irrelevant to Swafford's due process challenge; we have never held that sufficient evidence excuses a challenge to the due process afforded an accused.

The procedural facts are as set forth by the majority. Critical is that Swafford was permitted to file a request for the video, which sought:

"Video or digital description of the alleged violation of law or rule, from the medium visiting room, as is described in disciplinary report #258. Requesting to be allowed to personally review the video during the hearing, or have the hearing officer review the video outside of my presence during the hearing and be provided a summary of the content of the video, so that questions and follow-up questions may be asked."

Swafford never received the video or a summary thereof, and the matter proceeded to hearing despite Swafford's request for another continuance. The hearing officer found Swafford guilty of both charges and imposed a $20 fine. No explanation is provided in the record for denying production of this evidence to Swafford. Although the majority references a "written decision" of the hearing officer, the only record of the hearing officer's decision in the record on appeal is a cryptic transcription or summary of the hearing that is arguably ambiguous on the question of the hearing officer's review of the videotape. Although it reports a basis in the "facts provided by video evidence," it cannot be determined whether this means the officer actually reviewed the video or merely that the accusing officer testified to what the video depicted.

Swafford appealed the decision, and the secretary vacated the charge of misconduct but affirmed the conviction of lewd acts. Swafford then filed his 60-1501 petition. After an evidentiary hearing, the district court dismissed Swafford's petition. With regard to Swafford's due process issue, the court's memorandum relied in part on "the general rule that prison officials are given flexibility in executing internal prison policies and procedures," citing *Anderson v. McKune*, 23 Kan. App. 2d 803, 937 P.2d 16, *rev. denied* 262 Kan. 959, *cert. denied* 522 U.S. 958 (1997).

On appeal Swafford argues "[t]he combination of the failure to allow him a continuance, plus his [in]ability to view the video evidence against him, prevented Mr. Swafford from being able to prepare an adequate defense against the disciplinary charges against him."

Our appellate courts have often addressed the extent of due process rights due an inmate in prison disciplinary proceedings, but we have not often addressed the inmate's right to request, view, or present video evidence. As recognized by the majority, the United States Supreme Court has recognized that there must be mutual accommodation between institutional needs and objectives and the prisoner's rights and that the full panoply of rights due a defendant in criminal proceedings does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

As noted by the majority, our appellate courts have recognized the inmate's due process right to call witnesses and, more importantly for this case, *present documentary evidence*. *Shepherd v. Davies*, 14 Kan. App. 2d 333, 789 P.2d 1190 (1990); the *Shepherd* panel also clearly held that when the inmate is denied these rights, he or she should be provided the reasonable basis for such a denial. The panel stated:

"No rationale was ever provided by prison officials for their decision to deny Shepherd his requested witness. Although counsel for respondents has advanced some possible reasons for the prison officials' decision, such post-hoc hypothesizing does not allow this court to determine whether the prison officials' decision was actually based on these reasons or was purely arbitrary. Even if the decision was based on factors permitted under K.S.A. 44-13-405a(a) and (e), these factors may not meet constitutional due process requirements." 14 Kan. App. 2d at 337-38.

See *Washington v. Roberts*, 37 Kan. App. 2d 237, Syl. ¶ 3, 152 P.3d 660 (2007).

The Tenth Circuit has held that a penal institution's refusal to produce and review a potentially exculpatory videotape violates the inmate's due process right to present documentary evidence in his or her own defense. *Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007). The court noted that a videotape of the incident giving rise to the disciplinary charges would "have constituted significant, perhaps conclusive, evidence that might exonerate [the inmate] of the acts charged against him." 487 F.3d at 815. Notably, in *Howard*, as in this case before us, the institution never asserted, nor did the record support, a conclusion that producing the videotape would be unduly hazardous to institutional safety. 487 F.3d at 814.

Other federal circuits have held that the penal institution must disclose all exculpatory evidence in prison disciplinary proceedings. See, *e.g.*, *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981). The due process right recognized by these courts is not merely that such evidence be considered but that it be produced to the inmate to enable him or her to construct a defense. See *Saleh v. Davis*, No. 09-CV-02607, 2011 WL 334321, at *2 (D. Colo. 2011) (refusal to produce the video of an incident after it is requested by a pris-

oner prior to a disciplinary hearing can violate prisoner's due process rights). Granted, the federal circuits are not in lockstep on these issues. See, *e.g.*, *Howard v. Werlinger*, 403 Fed. Appx. 776, 2010 WL 5027169, at *1 (3d Cir. 2010) (unpublished opinion).

With these general principles in mind, I believe we must carefully examine KDOC regulations that may be applicable to the issue before us to determine whether they comport with our appellate court's explication of applicable due process. Those regulations clearly contemplate that the inmate may call witnesses, although such a request may be denied if the need for any witness is outweighed by the needs of the facility or would be cumulative or irrelevant. See K.A.R. 44-13-405a and 44-13-403(n)(1)-(4). When a request to call a witness is denied, a written explanation shall be made on the record unless it would endanger any person. K.A.R. 44-13-405a(e).

There is no specific regulation on the inmate's right to subpoena or utilize documentary evidence, except video evidence is contemplated by K.A.R. 44-13-403(l)(1), which provides:

"The disciplinary process shall, to the extent possible, discover the truth regarding charges against the inmate. For this purpose, the hearing officer shall be authorized to call and to interrogate any witness, and each inmate, staff member, volunteer, or contract employee called as a witness by the hearing officer shall be compelled to appear. The hearing officer may bring out the facts by direct or cross-examination but shall not act as prosecutor on behalf of the facility or charging officer against the accused inmate, or on behalf of the inmate. Testimony and evidence shall not be received by the hearing officer or introduced outside the presence of the accused inmate, except that *the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence.*" (Emphasis added).

The complete dearth of regulations addressing documentary evidence, and the absolute prohibition on inmate review of videotape evidence, cannot be squared with our caselaw generally recognizing that an inmate's limited due process rights include the right to present documentary evidence. Moreover, LCF's effective denial of Swafford's request to see the video, absent any explanations of a reason for the denial, would not pass constitutional scrutiny of the Tenth Circuit or other federal circuits enforcing a *Brady* right

to receive all exculpatory evidence. See *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

When the correctional institution possesses videotape of a purported disciplinary violation by an inmate, that videotape is not only relevant to the inmate's guilt or innocence, it may be the best evidence thereof. Consistent with the general rule that due process requires that the inmate have the ability to present documentary evidence in his or her defense, I would conclude that the hearing officer in such a proceeding may not arbitrarily deny production and consideration of any such videotape. Such documentary or electronic evidence should be made available to the inmate and admitted in the proceeding under the same standards that are reflected in the current regulations applicable to witnesses. That is to say, video evidence that purportedly captures the incident giving rise to the disciplinary violation should be made available on the request of the inmate and should be denied only on bases similar to those applicable to witnesses. Moreover, any such denial must be accompanied by a written explanation of the reason for denial. And, finally, the current regulation disallowing the viewing of the video evidence by the inmate is contrary to due process standards and must be revised in a manner not inconsistent with this opinion.

I am also compelled to note that my views are not dependent upon whether the hearing officer actually reviewed and considered the video. Even if he did, the refusal to produce it to Swafford—absent a reasonable basis for the refusal—denies fundamental due process rights. The video here was even more critical because it was also the sole basis for the allegations of the accusing officer; that is, neither of the witnesses personally observed the alleged misconduct—they simply observed the same security video never produced to Swafford. Denying that video to Swafford—even if it was considered by the hearing officer—cannot be considered due process. That video here served as Swafford's accuser. And Swafford's right to see it—at a minimum—was a key vindication was of his Sixth Amendment right to confront his accuser. To say this did not violate due process is to license the use of secret evidence against the accused. "Oh, don't worry, we will take a look at it in

determining your guilt, but you don't need to see it!" If this is the rule, the entire disciplinary process is a sham.

In summary, I would hold that Swafford was denied adequate due process when LCF failed to respond to his request for production or viewing of the videotape evidence, when that evidence was not made available to him and he was not provided a written explanation of good cause for the denial, and when he was convicted in a proceeding that did not adequately enable his presentation of a defense. His conviction should be reversed and the matter remanded for a disciplinary hearing. Additionally, I would urge that the applicable regulations be revised consistent with this dissent, including new regulations for production and presentations of documentary evidence—including video evidence—that parallel the existing regulations for inmate witnesses.