NOT DESIGNATED FOR PUBLICATION

No. 120,174

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER HUNT,
*Appellant*,

v.

DANIEL SCHNURR, et al.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed June 21, 2019. Affirmed.

*Daniel J. Wernert*, of Wernert Law LLC, of El Dorado, for appellant.

*Joni Cole*, legal counsel, El Dorado Correctional Facility, for appellees.

Before BUSER, P.J., PIERRON and BRUNS, JJ.

PER CURIAM: After being convicted of six disciplinary violations, Christopher Hunt, an inmate at El Dorado Correctional Facility, filed a K.S.A. 2017 Supp. 60-1501 petition, alleging prison officers had violated his rights under the Due Process Clause of the United States Constitution. The district court summarily dismissed Hunt's petition, holding that Hunt had failed to state a claim for relief and some evidence supported his disciplinary convictions. Hunt appeals. Finding no error, we affirm.

1

FACTS

On January 14, 2018, at approximately 12:30 a.m., an officer responded to the sound of something hitting a cell door and found Hunt fighting with inmate Harold Richardson. Shortly afterwards, an officer found two razor blades, two pipes, two small pieces of aluminum, one wire, two partially rolled cigarettes, and a small amount of green leafy substance in Hunt's cell. Hunt was charged with fighting, dangerous contraband, and tobacco contraband.

A couple of hours later, an officer found the tied-off fingertip of a glove with a white powdery substance inside, a razor blade, a bottle of clear urethane adhesive, and a bottle of something called "Prism PEARLS" in Hunt's cell. Hunt was charged with dangerous contraband. Another officer found a "homemade stabbing device" in Hunt's cell and charged him with dangerous contraband. Several hours after that, an officer found a television remote with the name and serial number scratched off in Hunt's cell and he was charged with theft.

A hearing was held on January 26, 2018. Hunt asked to call CSI Disciplinary Officer Johnson and Captain Mansfield as witnesses. He also asked to have Mansfield serve as a staff assistant. Finally, he requested a continuance to prepare his defense. His request for a continuance was granted.

On February 8, 2018, Hunt called in for a hearing. The hearing officer denied Hunt's request for a staff assistant, finding that Hunt was able to represent himself. Hunt acknowledged receipt of his disciplinary reports and summons within the appropriate time limits and entered a plea of not guilty. He submitted a witness list and asked to call Richardson, but Richardson refused to participate in the hearing process. The hearing officer continued the hearing for the reporting officers' testimony.

2

On February 12, 2018, another hearing was held, presided over by CSI Johnson. All but one of the reporting officers appeared, as did Hunt. Johnson asked several questions of one reporting officer. Johnson then had Hunt removed for arguing. CSI Austin was assigned as Hunt's staff assistant and stated neither he nor Hunt had anything to add. The reporting officers stated their reports stood as written. Johnson found Hunt guilty of all charged violations.

The warden approved Hunt's convictions and Hunt appealed them to the Secretary of Corrections. He then filed a K.S.A. 60-1501 petition, claiming violations of Kansas administrative regulations and his due process rights. In his petition, he stated his imprisonment was unlawful because of "all said violations included in attachments." His attachments included the record of the disciplinary proceedings for his violations.

He also claimed that "per policy and procedure," the prison officers involved should have: (1) taken photographs after his fight with a fellow inmate; (2) filed a "shake down sheet" listing what was confiscated; (3) photographed any confiscated contraband; (4) tested any confiscated substances; (5) had him submit to urinary analysis testing to prove he was the one taking any confiscated substances; and (6) provided him with an opportunity for independent testing of any confiscated substances. He also claimed the officers had been given permission to file false reports against him, and he had been convicted in a previous case even when video footage validated his claim.

The district court summarily dismissed Hunt's petition. The court first held that Hunt had failed to state a claim for relief. The court noted that inmates have limited due process rights, and Hunt had received those rights. The court added that Hunt "cannot be heard to complain if he fails to participate in the hearing or becomes so unruly that he must be removed prior to its completion." The court also found that Hunt's convictions were supported by some evidence, and the hearing officer had made a sufficient record of the hearings and his findings. Finally, the court held that "nothing complained of by Hunt

3

as to internal 'protocol matters' is of such a nature or character as to shock the general conscience of the court or be intolerable to fundamental fairness." Hunt appeals.

## ANALYSIS

*Failure to State Claim for Relief*

On appeal, Hunt argues the district court erred in summarily dismissing his petition for failure to state a claim for relief. To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49; see K.S.A. 2018 Supp. 60-1503(a). An appellate court exercises unlimited review of a summary dismissal. *Johnson*, 289 Kan. at 649.

We apply a two-step analysis when the petitioner alleges he or she was denied due process. First, we must determine whether the State has deprived the petitioner of life, liberty, or property. If so, then we must determine the extent and nature of the process due. 289 Kan. at 649.

Hunt received a monetary fine for each of his six disciplinary convictions, ranging from $5 to $20. A monetary fine implicates a protected property interest. *Sauls v. McKune*, 45 Kan. App. 2d 915, 920, 260 P.3d 95 (2011).

Because Hunt has shown an implicated liberty or property interest, this court must now determine the extent and nature of the process due. In prison disciplinary

4

proceedings, an inmate's procedural due process rights are generally limited to written notice of the charges, an impartial hearing, an opportunity to call witnesses, an opportunity to present documentary evidence, and a written statement from the hearing officer on the findings and reasons for the decision. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627-28, 24 P.3d 128 (2001); *Swafford v. McKune*, 46 Kan. App. 325, 329, 263 P.3d 791 (2011). If an inmate's constitutional rights are violated in a disciplinary hearing, such an error may be deemed harmless if this court can declare beyond a reasonable doubt that the error did not affect the outcome of his disciplinary hearing. See *Sauls*, 45 Kan. App. 2d at 921.

When reviewing a district court's summary dismissal of a petition for failure to state a claim upon which relief can be granted, we must accept the plaintiff's alleged facts as true. "The court must determine whether the alleged facts and all their inferences state a claim, not only on the theories set forth by the plaintiff, but on any possible theory." *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007).

Hunt argues he was denied an impartial hearing and an unbiased hearing officer. He makes several allegations to support his claim: (1) He was forced to appear at the hearing by phone instead of in person; (2) Johnson removed him from the hearing for asking one question; (3) Johnson denied two of his witness requests without explanation; and (4) Johnson lied in the record about Austin's role as staff assistant. He also claims officers destroyed his personal property and falsified reports against him.

*Presence at Hearing*

Hunt claims that he was denied his right to be present at his hearing. An inmate's right to be present at a disciplinary hearing is not absolute and "may be limited by the competing concerns of maintaining institutional safety and other correctional goals." *Hogue v. Bruce*, 279 Kan. 848, 852, 113 P.3d 234 (2005). If an inmate is "disruptive or

refuses to be present," the hearing officer may hold the hearing in the inmate's absence. K.A.R. 44-13-403(d). In that case, the hearing officer must assign a staff assistant to aid the inmate, and the hearing officer must state on the record the reason for the inmate's absence. K.A.R. 44-13-403(d).

While inmates generally carry the burden of proof in habeas proceedings, when prison officials deny inmates some aspect of procedural due process, the "'burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners.'" *Hogue*, 279 Kan. at 853 (quoting *Grandison v. Cuyler*, 774 F.2d 598, 604 [3d Cir.1985]). Prison officials may meet this burden by providing an explanation in either the disciplinary hearing record or through testimony presented in court. *Hogue*, 279 Kan. at 853 (quoting *Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 85 L. Ed. 2d 553 [1985]). The hearing officer's reason cannot be arbitrary but must logically relate to maintaining institutional safety or correctional goals. *Hogue*, 279 Kan. at 853.

Hunt argues his due process rights were violated because he was forced to appear at the hearing by phone instead of in person. The record shows that he appeared by phone at one of the three hearings, though it does not say whether he appeared by phone at the other two. But Hunt provides no support for his argument that due process required that he appear at the hearing in person rather than by phone. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015) (holding failure to support a point with pertinent authority is like failing to brief the issue). In fact, administrative regulations give hearing officers the discretion to conduct hearings by phone when an inmate is in administrative or disciplinary segregation. K.A.R. 44-13-404(e).

Hunt also alleges Johnson arbitrarily removed him from the hearing. The disciplinary hearing record states: "Offender became argumentative towards this [hearing

6

officer] and was directed to correct this behavior. The offender continued to argue with [this hearing officer]. Offender removed from hearing due to his behavior." But Hunt claims Johnson removed him for asking a single question.

As noted, prison officials bear the burden of showing Hunt's removal related to some institutional concern. Because the district court held no evidentiary hearing, the disciplinary record must include an explanation for Hunt's removal to meet this burden. "[T]here must be a factual basis to support the reasons given by prison officials which satisfies the prison officials' burden of persuasion as to the sufficiency of the concern." *Hogue*, 279 Kan. at 854. Johnson explained in the record that Hunt was argumentative. He asked Hunt to correct his behavior but Hunt continued to argue. It was only then that Johnson had Hunt removed. The record thus provides at least a modicum of factual support for Hunt's removal.

Hunt also states he was removed for asking Johnson a question. He appears to claim this is part of his right to confront and cross-examine witnesses against him under K.A.R. 44-13-101(c). But the hearing officer was not a witness against him. Hunt never denied that the question was argumentative. For the first time on appeal, he states only that he did not believe the question was "argumentative in a way that should have prevented him from participating." Thus, Hunt's own allegations appear also to provide a factual basis for the decision to remove him.

*Right to Call Witnesses*

Hunt argues his witness requests were denied "without cause shown." Under administrative regulations, an inmate is entitled to have witnesses called to testify on his or her behalf at a disciplinary proceeding. K.A.R. 44-13-101(c)(5). To request a witness, an inmate must submit an authorized form that states the expected testimony from each requested witness. K.A.R. 44-13-306. The hearing officer has broad discretion in granting

7

or denying an inmate's witness request. K.A.R. 44-13-405a(b). The hearing officer may deny a request if the proffered testimony is irrelevant, repetitious, or if the prison's needs outweigh the inmate's interests. See K.A.R. 44-13-307; K.A.R. 44-13-405a(a). If a hearing officer denies a request, the record must contain a written explanation for the denial. K.A.R. 44-13-405a(e); see also *Ponte*, 471 U.S. at 497 (holding prison officials required to justify why witnesses are not allowed to testify, either by making explanation part of administrative record or by presenting testimony in court).

The record suggests that Hunt submitted the necessary forms to request three witnesses: Johnson, Mansfield, and Richardson. The record also shows that Richardson refused to participate in the hearing process. But nothing in the record shows why Johnson and Mansfield did not testify.

However, Hunt does not explain, nor does the record show, how the outcome of the hearing would have been different if Johnson and Mansfield had testified. Hunt claims Mansfield made a statement to him "about Richardson['s] . . . demeanor and behavior at the time of said event vs. defendant['s] calm, non-irractic [*sic*] [illegible] demeanor and behavior. How can this be justified as NOT being relevant testimony to an impartial hearing officer only trying to get to the truth per law and policy?"

Mansfield's purported statement appears related to Hunt's fighting charge. In his petition, Hunt claimed he "was in combat and then proceeded to defend himself of which he has the right to, especially as a senior." Self-defense is an affirmative defense to a fighting violation. Hunt bore the burden to prove he was acting in self-defense. See K.A.R. 44-12-301(b) (2017 Supp.). Presumably, Hunt wanted Mansfield's testimony to show Richardson was the aggressor. But the proffered testimony from Mansfield would have provided little, if any, support for Hunt's argument. His comment about the testimony's relevancy suggests he was informed of the reason for the denial of his request. Thus, any possible error here was harmless.

8

There is also a handwritten note in the record that appears to explain why he called Johnson as a witness, but it is illegible.

*Fabricated Record*

Hunt alleges that Johnson fabricated the hearing record, proving that Johnson was biased against him. Hunt claims he never spoke with Austin after Austin was assigned as staff assistant. Because of this, Hunt claims Johnson must have lied when he wrote that "CSI Austin, B. . . . states he nor the Offender wish to add anything." Hunt also says that Austin "told me directly that he was never told that I was in contempt."

But even if these facts were true, they do not show that Johnson fabricated the record. Austin was assigned as a staff assistant for Hunt after Hunt's removal, as required by K.A.R. 44-13-403(d). See K.A.R. 44-13-408. Since Austin was acting on Hunt's behalf, it would not necessarily be a lie for him to say Hunt had nothing to add. And Hunt does not deny that Austin was assigned as staff assistant. He only claims that Austin did not know why Hunt had been removed from the hearing. Hunt does not explain how this proves Johnson fabricated the record. Thus, this argument is meritless.

*Destruction of Property*

Hunt claims that prison officials "destroyed his personal property in a concerted act of retaliation." In his petition, Hunt stated the contraband that prison officers had confiscated was destroyed, violating his right to test independently any allegedly illegal substances. The record does show that the confiscated contraband was destroyed. But, the record also shows the contraband consisted mostly of items that need not be tested. For instance, officers confiscated pipes, which are tobacco contraband, and a "stabbing

device," which is dangerous contraband. See K.A.R. 44-12-901(a); K.A.R. 44-12-903(a)(3).

But for the first time on appeal, Hunt alleges that officers confiscated "legal research, records, and possible evidence related to a different case." Hunt did not raise this claim before the district court, thus it is not properly before this court on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). And nothing in the record supports this allegation.

*Falsified Reports*

In his petition, Hunt also alleged: "Officers allowed, and even given permission by administration to activate agitation initiative against Petitioner. Falsify reports under the penalty of perjury and yet even when camera footage validated Petitioner's claim. He was still wrongfully convicted. Case 17-12-028." On appeal, Hunt claims "reports used against him were falsified under penalty of perjury, and that he was prevented from showing camera footage which would have validated his claim." But looking at Hunt's petition, his claim about the camera footage appears related to a prior conviction not part of this appeal. As for his claim that officers falsified reports, this is a conclusory allegation unsupported by any alleged facts or anything in the record.

*Evidence Supporting Convictions*

Hunt claims the evidence did not support one of his convictions. When an inmate challenges the basis for the hearing officer's decision, due process demands only a modicum of evidence to support the disciplinary sanction "to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Superintendent v. Hill*, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). In prison disciplinary proceedings, due process demands only that some evidence

10

in the record support a hearing officer's decision. 472 U.S. at 455; see *Sammons v. Simmons*, 267 Kan. 155, 158-59, 976 P.2d 505 (1999). Determining whether this standard is satisfied does not require the reviewing court to examine the entire record, make an independent assessment of witness credibility, or reweigh the evidence. The relevant question is whether there is any evidence in the record to support the conclusion reached by the disciplinary authority. *Sammons*, 267 Kan. 155, Syl. ¶ 3.

On appeal, Hunt challenges only the evidence, or lack thereof, supporting his conviction for fighting. He does not challenge the evidence supporting his other convictions. Thus, he has waived and abandoned any argument on this point. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (holding issues not adequately briefed are considered waived or abandoned).

That said, there does appear to be at least some evidence supporting his other violations. Officers found razor blades, pipes, pieces of aluminum, wire, partially rolled cigarettes, and a green leafy substance on a desk in Hunt's cell as well as on a shelf above the desk. They found a razor blade under Hunt's mattress and a bottle of adhesive in his cabinet. They found the stabbing device on the floor near the back of Hunt's cell. They also found a remote with the name and serial number scratched off. While the evidence of Hunt's violations may not be overwhelming, at least "some evidence" supports his other convictions.

Hunt argues that the evidence does not support his conviction for fighting because the reporting officer did not appear at the hearing or otherwise provide sworn testimony. Fighting is a class I violation. K.A.R. 44-12-301(c) (2017 Supp.). In class I cases, the charging officer must be present at the hearing, either in person or by phone, unless excused by the hearing officer. A hearing officer may excuse the charging officer only if one of several statutory conditions are present. If the hearing officer excuses the charging officer from appearing, the hearing officer must document the reason. And if the charging

11

officer is not present at the hearing, "the officer's report and statement shall be made to the hearing officer in writing under oath." K.A.R. 44-13-404(b)(1)(D).

Here, the charging officer did not appear at the hearing. The record states only that "[Charging officer] unable to participate." This is not one of the statutory reasons for excusing a charging officer. And the record does not show that the hearing officer took the charging officer's statement in writing under oath. Thus, the hearing officer appears to have violated the applicable regulations.

A hearing officer's failure to comply with a regulation does not necessarily establish a due process violation, unless the failure violates fundamental fairness and rises to an unconstitutional level. See *Washington*, 37 Kan. App. 2d at 242. That is not the case here. Despite Johnson's failure to take testimony from the charging officer, the disciplinary report still provides some evidence of Hunt's guilt. In the report, the charging officer declared under penalty of perjury that he saw Hunt and Richardson fighting. Hunt also admitted in his petition that he fought with Richardson. He also included an affidavit from Richardson stating "an altercation occurred due to a misunderstanding on my behalf." Whether Hunt was fighting does not appear to have ever been at issue. Thus, some evidence supports this conviction and Johnson's failure to have the charging officer testify does not violate fundamental fairness.

Affirmed.