NOT DESIGNATED FOR PUBLICATION

No. 120,458

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER A. GUILBEAUX,
*Appellant*,

v.

DAN SCHNURR,
*Appellee*.


MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed November 1, 2019.
Affirmed.

*Chris J. Pate*, of Pate & Paugh, LLC, of Wichita, for appellant.

*Joni Cole*, legal counsel, El Dorado Correctional Facility, for appellee.


Before GREEN, P.J., BRUNS, J., and WALKER, S.J.

PER CURIAM:  This K.S.A. 60-1501 action arises out of a prison disciplinary
proceeding. Christopher Guilbeaux—an inmate at the El Dorado Correctional Facility—
filed this action after being disciplined at the prison for causing a disruption in which he
hit a corrections officer in the face. In addition, Guilbeaux was disciplined for possession
of tobacco contraband in violation of prison regulations. As a result of his violations, a
hearing officer imposed 90 days of restrictions and ordered him to pay $50 in fees.
Guilbeaux subsequently filed a petition pursuant to K.S.A. 60-1501, alleging various due
process violations. The district court summarily dismissed the petition. Finding no
reversible error, we affirm the district court.

1

Around 1 p.m. on October 19, 2017, Guilbeaux "was behaving in a disruptive manner by yelling, cursing, making gun like gestures with his hands, pointing them at . . . staff, and making gun noises like he was shooting at [them]." Although a correctional officer ordered him several times to turn around so he could be restrained, Guilbeaux refused to comply. While the officer was attempting to restrain him, Guilbeaux struck him in the face. As a result of these actions, Guilbeaux was charged with three Class I offenses—disobeying orders, disruptive behavior, and battery—in violation of prison rules.

Less than an hour later, Guilbeaux was taken to the medical unit at the prison. While searching him, officers found two batteries and a piece of paper with a brown substance inside in his right rear pocket. The paper was burnt on one end and "smell[ed] like something had been smoked out of it." Accordingly, Guilbeaux was charged with another Class I offense—possession of tobacco contraband. This charge was set forth in a separate Disciplinary Report and assigned a separate case number from the previous charges.

The disciplinary reports show, on their face, that Guilbeaux was served with a copy of each shortly after 9 p.m. on the day of the alleged infractions. However, Guilbeaux refused to sign the line acknowledging receipt of the documents. According to Guilbeaux, he did not receive hard copies of the disciplinary reports. Instead, he claims that a correctional officer read the complaints to him through the door of the medical clinic that evening.

Guilbeaux does not dispute that he received a summons and notice of hearing to be held on October 25, 2017. On the day, however, Guilbeaux asked for a continuance to prepare his defense, and the hearing officer granted his request. On November 1, 2017,

the hearing resumed and Guilbeaux testified that he did not have any memory of the events in question. It is unclear why the hearing was not completed at this time.

The next day, on November 2, 2017, the hearing officer held a telephonic hearing. Guilbeaux, again, denied memory of the events, raised service and notice objections, and requested staff assistance to help him prepare his defense. The hearing officer denied this request "due to [Guilbeaux] not meeting the requirements for a [s]taff assistant." Thereafter, according to the notes from the hearing, Guilbeaux "became argumentative towards the [hearing officer] and refused to correct his behavior." As a result, Guilbeaux was removed from the hearing. However, the hearing officer assigned a staff assistant who represented that neither "he nor the offender wish to add anything." The hearing was continued until November 6, 2017.

When the hearing reconvened on November 6, 2017, Guilbeaux, again, appeared by telephone due to his placement in segregation. During the hearing, the hearing officer denied a renewed request by Guilbeaux for a staff assistant. According to the hearing notes, Guilbeaux once again "became argumentative toward this [hearing officer] and was removed from the hearing due to that behavior." At that point, the hearing officer appointed a staff assistant who represented that neither "he nor the offender wished to add anything."

The reporting officers testified under oath and stated that they stood by their written reports. After considering the evidence, the hearing officer found Guilbeaux to be in violation of prison rules by committing battery, disobeying orders, and disruptive behavior in one case. Moreover, the hearing officer found Guilbeaux to be in violation of prison rules by possessing tobacco contraband in the other case. The hearing officer assessed Guilbeaux 90 days of restrictions and fined him $45 for the battery, disobeying orders, and disruptive behavior violations. In addition, the hearing officer fined him $5 for the tobacco possession violation.

3

Thereafter, Guilbeaux filed an administrative appeal in the battery, disobeying orders, and disruptive behavior case but did not file an appeal in the possession of tobacco contraband case. After the Secretary of Corrections upheld the hearing officer's decision in the battery, disobeying orders, and disruptive behavior case, Guilbeaux filed a K.S.A. 60-1501 petition in district court.

On July 19, 2018, the district court entered a six-page order of summary dismissal. In the order, the district court found that Guilbeaux failed to exhaust his administrative remedies in the tobacco contraband case because he failed to appeal to the Secretary of Corrections. Regarding the battery, disobeying orders, and disruptive behavior case, the district court found that the alleged due process violations did not rise to a constitutional level. Finally, the district court found that the hearing officer did not abuse his discretion by requiring Guilbeaux to participate in the disciplinary hearing by telephone due to Guilbeaux's segregation for disruptive behavior.

ANALYSIS

*Exhaustion of Administrative Remedies*

On appeal, Guilbeaux first contends that the district court erred by dismissing the claim in his K.S.A. 60-1501 petition relating to the possession of tobacco contraband violation for failure to exhaust administrative remedies. Whether a party is required or has failed to exhaust his or her administrative remedies is a question of law over which our review is unlimited. *Corter v. Cline*, 42 Kan. App. 2d 721, 722, 217 P.3d 991 (2009); *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 16-17, 203 P.3d 1 (2008). Relevant to this case, K.S.A. 75-52,138 requires a petitioner to exhaust all administrative remedies "established by rules and regulations promulgated by the secretary of corrections" before seeking relief from the district court. *Corter*, 42 Kan. App. 2d at 722; *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868-69, 90 P.3d 961 (2004).

4

Here, Guilbeaux does not dispute that he failed to appeal the hearing officer's determination that he violated the prison's tobacco contraband rule to the Secretary of Corrections. Instead, Guilbeaux contends that compliance with the requirement to file a separate appeal relating to the tobacco violation was unnecessary. In so arguing, Guilbeaux asserts that we should apply a judicially created equitable exception to exhaustion.

In support of his position, Guilbeaux cites *State v. Chelf*, 46 Kan. App. 2d 522, 263 P.3d 852 (2011). In that case, a panel of this Court found that exhaustion is not required where "the administrative remedies available are inadequate or compliance with them would serve no purpose." 46 Kan. App. 2d at 537. Here, there has been no allegation by Guilbeaux that administrative remedies were unavailable or inadequate. Instead, Guilbeaux speculates that the requirement to file a separate appeal for the tobacco violation would have served no purpose. Of course, since he failed to appeal to the Secretary of Corrections, we have no way of knowing what the outcome would have been.

Likewise, we note that *Chelf* involved a personal injury claim by an inmate, while the present case involves a violation of the internal disciplinary rules of the prison. We also note that the Kansas Supreme Court questioned—without deciding—the holding in *Chelf* in the case of *Sperry v. McKune*, 305 Kan. 469, 486, 384 P.3d 1003 (2016), suggesting that courts should not create judicial exceptions to the exhaustion requirement of statutes. Of course, even in *Chelf*, the panel recognized that "the exhaustion requirement set forth in K.S.A. 75-52,138 is a *mandatory*, but nonjurisdictional, prerequisite to filing suit that must be *strictly* enforced by the court." (Emphasis added.) 46 Kan. App. 2d at 533.

Indeed, our Supreme Court has found that where adequate administrative remedies are available, they are to be followed. See *Cole v. Mayans*, 276 Kan. 866, 869, 80 P.3d

5

384 (2003). In other words, when an administrative remedy is provided by statute or regulation, such a remedy must ordinarily be exhausted before a party can bring the matter before the courts. K.S.A. 75-52,138; *Cole*, 276 Kan. at 869. Here, there was an administrative remedy provided by K.A.R. 44-13-703 (appeal on the record to Secretary of Corrections in Class I and II offense cases only). Guilbeaux knew that he could appeal to the Secretary and simply chose not to follow the appeal procedure after he was found to have committed a tobacco contraband violation. Accordingly, we affirm the district court's decision that Guilbeaux failed to exhaust administrative remedies in regards to the tobacco contraband violation.

*Due Process*

Guilbeaux also contends that the district court erred in summarily denying his K.S.A. 60-1501 petition. Specifically, he contends that his due process rights were violated. The question of whether due process under the Fourteenth Amendment to the United States Constitution exists in a particular case is a question of law, subject to de novo review. See *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004). In considering a due process claim, we apply a two-step analysis. First, we determine whether the State has deprived Guilbeaux of life, liberty, or property. If so, we then determine the extent and nature of the due process due. *Johnson v. State*, 289 Kan. 642, Syl. ¶ 3, 215 P.3d 575 (2009); *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005).

To establish a claim for a violation of due process in a habeas corpus proceeding, an inmate must establish a deprivation of a recognized liberty or property interest. *Hogue*, 279 Kan. at 850-51. Here, fines were imposed for his violations of prison disciplinary rules. So, at the least, Guilbeaux's property interests have been implicated. See *Stano v. Pryor*, 52 Kan. App. 2d 679, 682, 372 P.3d 427 (2016). Because Guilbeaux sufficiently implicated his due process rights, we next determine the extent and nature of the due process that was required.

6

In prison disciplinary proceedings, the prisoner is not afforded the full panoply of rights that a defendant in a criminal proceeding is afforded. *Hogue*, 279 Kan. at 851 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); *Rice*, 278 Kan. at 320. In particular, we are to give broad deference to prison officials in maintaining discipline in prison settings. *Swafford v. McKune*, 46 Kan. App. 2d 325, 328, 263 P.3d 791 (2011). "The mere fact that a hearing officer in a prison discipline case has not followed DOC procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level." *Anderson v. McKune*, 23 Kan. App. 2d 803, 811, 937 P.2d 16 [1997]).

However, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Rice*, 278 Kan. at 321. In prison disciplinary proceedings, inmates are still entitled to certain basic rights. These rights include written notice of the charges, an impartial hearing, the opportunity to call witnesses as well as present documentary evidence, and a written statement of the findings and conclusions reached by the administrative hearing officer. *Hogue*, 279 Kan. at 851 (quoting *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 [2001]).

Nevertheless, "maintenance and administration of penal institutions are executive functions and, before courts will interfere, the institutional treatment must be of such a nature as to clearly infringe upon constitutional rights, be of such character or consequence as to shock the general conscience, or be intolerable to fundamental fairness." *Crutchfield v. Hannigan*, 21 Kan. App. 2d 693, 695, 906 P.2d 184 (1995). Hence, to avoid summary dismissal of a K.S.A. 60-1501 petition, allegations must be

made of shocking and intolerable conduct or continuing mistreatment of a constitutional nature. *Crutchfield*, 21 Kan. App. 2d at 695; see *Washington*, 37 Kan. App. 2d at 240.

Here, the face of the disciplinary report shows that it was served on Guilbeaux on the evening of the incident and that he refused to sign acknowledging receipt. Although Guilbeaux disputes actually being served with a copy of the disciplinary report on the evening of the incident, he admits that it was, at a minimum, read to him at that time. Moreover, he does not dispute that he at least received a copy of the report on November 1, 2017. This would have been prior to any evidence being received by the hearing officer.

Notably, Guilbeaux has failed to articulate any actual harm that resulted from the notice he was provided. To the contrary, throughout his K.S.A. 60-1501 petition, Guilbeaux cites to numerous ways in which he participated at the various stages of the disciplinary hearing process. Further, Guilbeaux does not dispute that the hearing officer continued the hearing to give him additional time to prepare his defense. Thus, we do not find that Guilbeaux's allegations rise to the level of shocking and intolerable conduct or to the level of continuing mistreatment of a constitutional nature.

Guilbeaux also argues that he was denied the ability to call witnesses or present documentary evidence. In this regard, the record demonstrates that Guilbeaux made four witness requests and one request for documents. First, Guilbeaux sought to have the prison chaplain testify that he was under the influence of demonic possession at the time of the incident in which he struck a corrections officer. However, the hearing officer denied this request because the chaplain was not present during the incident, and Guilbeaux does not appear to challenge that decision. Even if he did, we see no reason to question the hearing officer's discretion regarding this request.

In addition, Guilbeaux requested to have an inmate and a staff member testify that he did not receive written notice of the disciplinary complaints against him until November 1, 2017. For the same reason, he also sought to obtain video from an infirmary camera. However, regarding service of the disciplinary report, we have already concluded that his claim does not rise to the level of a constitutional violation.

Further, Guilbeaux requested to have another inmate testify regarding him being under the influence of demonic possession. Nevertheless, we do not find that Guilbeaux was prejudiced by the exclusion of this witness. Notably, Guilbeaux fails to explain the relevance of this evidence or the harm imposed by not allowing the witness to testify. As such, we will not consider this unsupported argument. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not adequately briefed are deemed waived or abandoned). Furthermore, after being removed from the hearing, the assigned staff assistant advised that neither he nor Guilbeaux had any additional evidence to present. Hence, we do not find that Guilbeaux has alleged a violation that rises to a constitutional level.

Guilbeaux also argues that he was denied the opportunity to cross examine witnesses at the hearings. According to the notes from the disciplinary hearing, the only witnesses were Guilbeaux—who testified that he could not remember the incident—and the complaining officers—who simply stood by their written reports. Again, we find it to be significant that Guilbeaux had to be removed from the hearing on two occasions because of his disruptive behavior and that a staff assistant assigned to represent him told the hearing officer that neither he nor Guilbeaux wished to add anything.

In light of the nature of disciplinary proceedings, the due process rights of a prisoner are limited and must be balanced against the needs of the prison officials to maintain safety. See *Rice*, 278 Kan. at 320; *Swafford*, 46 Kan. App. 2d at 328; *Anderson*, 23 Kan. App. 2d at 809. Here, as a consequence of his own disruptive behavior,

9

Guilbeaux chose not to avail himself to the full extent of the hearing process. In that regard, broad deference is afforded to prison officials in maintaining discipline in prison settings. See *Rice*, 278 Kan. at 320, 323; *Swafford*, 46 Kan. App. 2d at 328; *Anderson*, 23 Kan. App. 2d at 809. Further, once removed, Guilbeaux's appointed staff assistant chose not to cross examine the reporting officers, which was within his discretion to do. Consequently, we conclude that Guilbeaux has also not alleged or demonstrated a constitutional violation in this regard.

Similarly, Guilbeaux argues that he was improperly denied the ability to appear at the disciplinary hearing in person. However, a review of the record on appeal reveals that this was a result of his own disruptive actions. A review of the record also reflects that it was reasonable for prison officials to believe that Guilbeaux presented a safety concern that justified his participation in the disciplinary hearing by telephone rather than in person. Moreover, based on some of his arguments, it appears that he recognizes that he was aware that he had trouble controlling his actions.

We note that the administrative regulations relating to disciplinary hearings contemplate that inmates like Guilbeaux may be in segregation at the time of their hearing. In particular, K.A.R. 44-13-404(e) states:

> "Hearings for inmates detained or held in administrative or disciplinary segregation status may be conducted by telephone, with the inmate remaining in the inmate's cell and outside the immediate physical presence of the hearing officer and any witnesses, including the reporting officer, at the discretion of the hearing officer."

Thus, we conclude that Guilbeaux has not asserted a claim rising to a constitutional level based on having to participate in the disciplinary hearing by telephone rather than in person.

10

We also note that K.A.R. 44-13-408 gives a hearing officer discretion to determine whether the conditions for staff assistance are met. Here, the hearing officer determined that these conditions were not met by Guilbeaux and it has not been shown how this decision constituted an abuse of discretion. Nevertheless, the hearing officer did provide staff assistance to Guilbeaux after his own disruptive actions resulted in his removal from the hearing. Further, a review of the record reveals that Guilbeaux meaningfully participated in his defense during the disciplinary hearings. In fact, he filed several lengthy motions in each of his disciplinary hearings.

Finally, Guilbeaux argues that the hearing officer was biased against him. However, he does not allege any facts to support his bare assertion that the hearing officer was not impartial. As noted above, "[t]he mere fact that a hearing officer in a prison discipline case has not followed DOC procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level." *Anderson*, 23 Kan. App. 2d at 811. Accordingly, we conclude that Guilbeaux's alleged constitutional violation in this regard must also fail.

We, therefore, affirm the district court's summary dismissal of Guilbeaux's K.S.A. 60-1501 petition.

Affirmed.

11