No. 115,911

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LARRY D. NORWOOD,
*Appellant*,

v.

RAY ROBERTS,
SECRETARY OF CORRECTIONS,
*Appellee.*


SYLLABUS BY THE COURT


1.

The level of process due to an inmate in a prison disciplinary setting is not the same as in a criminal trial: the inmate is only entitled to a minimal level of due process.


2.

When a court reviews a prison disciplinary sanction to see whether the finding of a violation of prison rules is supported by evidence, all that's required is that there be some evidence supporting the finding.


3.

Prison officials are not required to provide inmates with access to materials that could threaten safety within the prison. Accordingly, the inmate's rights were not violated when a hearing officer reviewed a surveillance videotape outside of the inmate's presence.

1

4.

On the facts of this case, some evidence supported the hearing officer's conclusion that the inmate violated a prison regulation.

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed March 17, 2017. Affirmed.

*Larry D. Norwood*, appellant pro se.

*Sherri Price*, special assistant attorney general, Lansing Correctional Facility, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

LEBEN, J.: In a prison disciplinary hearing, Larry D. Norwood was found guilty of threatening or intimidating a correctional officer based on the officer's report that Norwood had shoved a door into him. On appeal, Norwood argues that his due-process rights have been violated because the evidence doesn't support the disciplinary conviction and because he should have been present when the hearing officer watched the video of the incident.

But the level of process due to an inmate in a prison disciplinary hearing is not the same as in a criminal trial: the inmate is only entitled to a minimal level of due process. See *Superintendent v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *Deere v. Heimgartner*, No. 113,944, 2015 WL 8590897, at *4 (Kan. App. 2015) (unpublished opinion). Accordingly, on appeal, we ask only whether *some evidence* supports the conviction. *Frost v. McKune*, 44 Kan. App. 2d 661, 664, 239 P.3d 900 (2010). Here, both the correctional officer's report of what happened and the hearing officer's description of the video support the conviction. And while inmates do have the right to be present when testimony and evidence are laid out at a disciplinary hearing, this right doesn't extend to watching surveillance-video evidence from prison security

2

cameras. See *Swafford v. McKune*, 46 Kan. App. 2d 325, Syl. ¶ 5, 263 P.3d 791 (2011); K.A.R. 44-13-403(l)(1). We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, a correctional officer named Burge (his first name doesn't appear in the record on appeal) issued Norwood a disciplinary report for threatening or intimidating him in violation of a prison regulation, K.A.R. 44-12-306. According to the report, Burge told Norwood that he wasn't going to argue with him and to stop following him, and when Burge walked into an office and tried to shut the door, Norwood "kicked and shoved" the door into Burge.

At the disciplinary hearing that took place about 2 weeks later, Norwood pled not guilty, and the disciplinary report was read into the record. Norwood told the hearing officer that he had asked Burge to let him go to another area in the prison so that he could collect his legal mail. Norwood said that Burge didn't answer him and that Burge then pushed the office door into Norwood, causing him to lose his balance: "I didn't know that he wanted to close the door. He called me a liar and pushed the door into me. . . . I was trying to keep my balance. The force I was placing on the door was only equal to the force he was [exerting] on the door." Norwood said he hadn't been trying to threaten or intimidate Burge.

Norwood asked two other inmates to testify on his behalf; he said they would confirm that he was only trying to regain his balance after Burge pushed the door into him. When those witnesses were called, though, they refused to testify.

Norwood had the chance to ask questions of Burge at the hearing. Burge responded to one question by denying Norwood's version of the events: "I didn't shove the door into you. When I closed the door, you shoved and kicked it back open into me."

3

Burge told the hearing officer that Norwood regularly asked to leave the area and that on this day, Burge had told him "six or seven times at least" that he didn't want to discuss it anymore. Burge also said that he had felt that Norwood was being aggressive and intended to threaten or intimidate him.

The hearing officer then watched the video of this incident and described it in the hearing transcript: "Norwood can be seen stopping the office door from closing at timestamp 10:24:07. [Officer] Burge walked across the office and Norwood can be seen opening the door. At 10:24:45 Burge is seen attempting to close the door a second time, and Norwood pushed aggressively on the door (into the officer)." Norwood wasn't allowed to watch this video, and it's not included in the record on appeal.

The hearing officer found that it was more likely than not that Norwood had forced the office door open in a threatening manner, so she found him guilty of violating K.A.R. 44-12-306. Norwood was fined $10, and he claims that this disciplinary conviction also caused him to lose his job and certain other privileges within the prison. Norwood appealed to the Secretary of Corrections, who denied the appeal, finding that the prison officials had substantially complied with facility procedures and that some evidence supported the conviction.

Norwood then filed a habeas petition under K.S.A. 2016 Supp. 60-1501 alleging due-process violations because no evidence supported the conviction and because he should have been allowed to watch the video at the hearing, among other claims. The district court concluded that Norwood's due-process rights weren't violated at the disciplinary hearing because there was some evidence of threatening behavior and because an inmate doesn't have the right to be present when a hearing officer reviews video evidence from a prison's surveillance cameras.

Norwood has appealed to this court.

4

ANALYSIS

Norwood's primary argument on appeal is that his due-process rights were violated because no evidence supported his prison disciplinary conviction for threatening or intimidating a correctional officer.

We review a district court's decision on a petition under K.S.A. 2016 Supp. 60-1501 to determine whether the district court's factual findings are supported by substantial evidence and are sufficient to support the court's conclusions of law. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004); *Hooks v. State*, 51 Kan. App. 2d 527, 530, 349 P.3d 476 (2015). Evidence is substantial when a reasonable person would accept it as sufficient to support a conclusion. *Rice*, 278 Kan. at 320. We then review legal conclusions independently, without any required deference to the district court. 278 Kan. at 320; *Hooks*, 51 Kan. App. 2d at 530. Whether an inmate received due process is one such legal conclusion. See *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001).

In a prison-discipline setting, an inmate has some due-process rights but fewer than he or she would have in a regular criminal proceeding. *Swafford*, 46 Kan. App. 2d at 328-29 (citing *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]). In this setting, due process is satisfied if *some evidence* supports the hearing officer's decision. *Frost*, 44 Kan. App. 2d at 664. Accordingly, since all we are to do is see whether at least *some evidence* supports the decision, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence. The relevant question is whether there is any evidence in the record to support the conclusion reached by the prison hearing officer. *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016).

In this case, Norwood was found guilty of violating a regulation that prohibits inmates from threatening people: "An inmate shall not threaten or intimidate, either

directly or indirectly, any person." K.A.R. 44-12-306(a). And there was "some evidence" supporting that conviction. In the disciplinary report, Burge wrote that Norwood kicked and shoved the office door into him. The hearing officer's description of the video of this incident is consistent with the disciplinary report: "Norwood pushed aggressively on the door (into the officer)." So there was some evidence that Norwood pushed the office door into Burge, which is behavior that could be considered threatening or intimidating.

Norwood spends many pages in his brief on appeal explaining how and why Burge's version of what happened doesn't make logical sense; he accuses both Burge and the hearing officer of lying. Norwood also argues that the district court should have considered the many character references that he submitted with his brief as evidence that he was not the type of person who would threaten or intimidate anyone. Norwood even claimed in one of his filings in the district court that his version of what happened— which he describes in his brief as Burge shoving the door into him, and not the other way around—"is so accurate . . . that Stevie Wonder could see he is telling the truth and has been from the beginning." Even if that were true—that the correction officer lied, that Norwood has been telling the truth, and that Norwood is the model inmate described in his character references—that would not change our role in this appeal.

Norwood had an evidentiary hearing in the prison system, and the hearing officer found that the facts supported the charge against Norwood. On appeal, we do not assess anyone's credibility or reweigh the evidence on either side: The only question we ask is whether some evidence supports the disciplinary conviction. And here, because there is some evidence that Norwood threatened or intimidated Burge, there is no due-process violation. See *Anderson v. McCune*, 23 Kan. App. 2d 803, 807-08, 937 P.2d 16 (1997) (noting that even evidence fairly characterized as "'meager'" is sufficient) (quoting *Hill*, 472 U.S. at 457).

With regard to the weight of the evidence, Norwood also complains that the hearing officer shouldn't have considered evidence of Burge's subjective impression about Norwood's actions. Norwood is correct that an administrative regulation, K.A.R. 44-12-306(c), makes that evidence irrelevant to the charge of threatening or intimidating a corrections officer: "The subjective impression of the target of the alleged threat or intimidation shall not be a factor in proving a violation of subsection (a)." Norwood also is right in noting that the hearing officer did ask Burge whether he felt that Norwood intended to threaten or intimidate him, and Burge said yes.

We must again return to the standard we must apply to this appeal. The hearing officer shouldn't have considered Burge's testimony about his own subjective impression about whether Norwood was trying to threaten or intimidate Burge. Even so, there are two problems with Norwood's argument on this point. First, our record doesn't disclose what weight, if any, the hearing officer placed on Burge's subjective-impression testimony. Second, even if we ignore Burge's testimony on this point, there was still some evidence supporting the disciplinary conviction (the disciplinary report and the video), so there's no due-process violation in finding Norwood guilty of the charge.

Norwood's other major argument on appeal is that his due-process rights were violated because he wasn't allowed to watch the surveillance video of the incident. The record doesn't disclose whether Norwood actually asked the hearing officer if he could watch the video. But even if we assume that he did make that request and that it was denied, that denial would not violate his rights.

As we've already noted, inmates are entitled to limited due process in disciplinary proceedings. On a procedural level, that means that officials must give the inmate written notice of the charge, hold an impartial hearing, provide the inmate the opportunity to call witnesses and present documentary evidence, and present written findings and the reasons for the decision. *Swafford*, 46 Kan. App. 2d at 329. In line with these due-process

considerations, K.A.R. 44-13-403(l)(1) provides that the accused inmate must be present for all testimony and evidence set out at the hearing. But the regulation makes an exception for some video evidence: "[T]he accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence." K.A.R. 44-13-403(l)(1). So when the hearing officer watched the video outside of Norwood's presence, she complied with this regulation—which did not violate Norwood's due-process rights. See *Swafford*, 46 Kan. App. 2d at 331 (holding that due process does not require that prison security videos be made available to inmates who are subjects of prison disciplinary proceedings); accord *Kling v. Cline*, No. 113,519, 2015 WL 7192052, at *4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1017 (2016); *Requena v. Cline*, No. 108,114, 2013 WL 646497, at *4 (Kan. App. 2013) (unpublished opinion); *Hopson v. Roberts*, No. 107,670, 2012 WL 4795651, at *2 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1130 (2013).

Norwood cites some federal caselaw discussing a prisoner's right to review surveillance-video evidence, but as our court noted in *Swafford*, the federal courts don't agree on this issue, and Kansas has not recognized such a right. 46 Kan. App. 2d at 331; 46 Kan. App. 2d at 334-35 (Greene, C.J., dissenting). We think the prison's regulation—under which inmates have no right to review video-surveillance footage even when it's relevant to the disciplinary proceeding—makes sense. Prison officials are not required to provide access to materials that could threaten safety within the prison. *Scruggs v. Jordan*, 485 F.3d 934, 940 (7th Cir. 2007). Security could surely be placed in jeopardy if inmates knew where all cameras were located and where they might take advantage of a location that would not be covered by a surveillance camera at all. See *Jones v. Cross*, 637 F.3d 841, 848-49 (7th Cir. 2011); *Jenkins v. Warden*, No. 5:14-03687-BHH, 2015 WL 5474880, at *2 (D.S.C. 2015) (unpublished opinion); *Jones v. Sherrod*, No. 07-673-DRH-PMF, 2010 WL 3880488, at *3 (S.D. Ill. 2010) (unpublished opinion). Here, the hearing officer, a neutral party, reviewed the tape and provided Norwood a summary of its relevant contents as part of the written decision. See *Estrada v. Holinka*, 420 Fed.

8

Appx. 602, 605 (7th Cir. 2011) (unpublished opinion) (concluding that prisoner's right to obtain evidence favorable to him was satisfied, with respect to surveillance video, when prison official reviewed the tape, found no evidence favorable to inmate, and provided written summary of tape contents). Norwood's procedural due-process rights weren't violated when the hearing officer reviewed the surveillance video outside Norwood's presence.

Norwood makes three other arguments in passing: He claims that the hearing officer shouldn't have denied his request for staff assistance at his hearing, that a delay in receiving his legal mail violated his right to access the courts, and that the Secretary of Correction's response to his habeas petition was filed too late and should be "throw[n] out."

- K.A.R. 44-13-408 provides that the hearing officer shall provide a staff member to assist the inmate if (among other reasons) there are circumstances that substantially impair the inmate's ability to participate meaningfully in his or her own defense. If an inmate's request for staff assistance is denied, the hearing officer has to record that denial and the reason for it in the hearing record. K.A.R. 44-13-502a. Here, Norwood claims that his inability to watch the video meant he needed staff assistance, that he asked for such assistance, that the assistance was denied, and that none of this was recorded in the hearing record. But there's no evidence that Norwood's ability to participate meaningfully in his defense was impaired: He participated in the hearing by calling witnesses, questioning Burge, and speaking on his own behalf. Not being able to watch the video didn't substantially impair his ability to present his defense, so not being provided staff assistance didn't violate his due-process rights.

9

- As to Norwood's mail-delay claim, he is correct that inmates retain a right to access the courts. See *Wolff*, 418 U.S. at 556. But this claim isn't properly before us because it has nothing to do with the actual disciplinary conviction that Norwood has appealed. It's true that the door-shoving incident began with Norwood asking to retrieve his legal mail, but it ended with Norwood being found guilty of threatening or intimidating Burge. Norwood has appealed that disciplinary conviction—a claim of delay in receiving legal mail simply wasn't part of the disciplinary hearing, so it isn't part of this case, either.

- As for the Secretary's response to Norwood's habeas petition, the usual deadline for disciplinary-proceeding challenges is 30 days. K.S.A. 60-1504. Norwood first filed his petition on May 26, 2015, and the Secretary filed a timely motion to dismiss on June 18, 2015, arguing that Norwood's petition was filed too late. Norwood's complaint is about the Secretary's second filing, on March 10, 2016, which responded to Norwood's petition on its merits. But as the district court found, the Secretary's late filing doesn't affect the ruling on Norwood's claims. Simply put, we reach the same result even if we ignore the Secretary's March 2016 response.

We affirm the district court's judgment.