NOT DESIGNATED FOR PUBLICATION

No. 124,396

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RHEUBEN JOHNSON,
*Appellant*,

v.

DAN SCHNURR, Warden, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed November 10, 2022. Affirmed.

*Shannon S. Crane*, of Crane Law, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, for appellees.

Before HURST, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Rheuben Johnson appeals the dismissal of his K.S.A. 60-1501 petition for a writ of habeas corpus related to a disciplinary report and hearing arising from his written correspondence to his ex-wife. Johnson argues that the petition should not have been dismissed because his disciplinary hearing did not comply with procedural due process and the prison policy prohibiting contact with his ex-wife violates his First Amendment rights. As Johnson has failed to show a violation of his due process rights or any error below, this court affirms the district court's dismissal of his petition.

1

In 2012, Johnson solicited three persons to murder his ex-wife on multiple occasions. The State charged Johnson with three counts of solicitation to commit murder in the first degree, and the jury convicted him of two of the counts. The district court sentenced Johnson to a controlling term of 132 months in prison. *State v. Johnson*, No. 110,837, 2017 WL 4558235, at *1-4 (Kan. App. 2017) (unpublished opinion).

During Johnson's imprisonment, his ex-wife filed a combined pleading for a private child in need of care (CINC) proceeding and a motion to terminate Johnson's parental rights. *In re R.J.*, No. 122,230, 2021 WL 137346, at *1 (Kan. App. 2021) (unpublished opinion). The records of that proceeding are not included in the record on appeal of this case, but there is evidence Johnson received notice of the proceedings; however, there is no evidence indicating whether he received the CINC petition directly from his ex-wife or from his ex-wife's attorney.

Johnson responded to the CINC petition with a pro se "counter-petition" to terminate his ex-wife's parental rights, alleging she was an unfit parent. In an apparent attempt to ensure compliance with service requirements, Johnson not only mailed the document to the district court and his ex-wife's attorney, but also sent a copy directly to his ex-wife, the child's grandparents, and Johnson's own attorney. Johnson's ex-wife alleged she received Johnson's "counter-petition" in the mail on August 31, 2019, and thereafter she contacted the Department of Corrections Office of Victim Services to report her receipt of the pleading. The Hutchinson Correctional Facility (HCF)—where Johnson was incarcerated—issued a disciplinary report against Johnson for a violation of Internal Management Policy and Procedure (IMPP) 21-106, I.A. The policy provided that "[t]he offender shall be informed upon entry to the Reception and Diagnostic Unit at EDCF and TCF that he/she is not to initiate contact with the victim[s] in his/her case. The

2

victim must initiate the process for contact with the offender." The prison scheduled a disciplinary hearing for September 25, 2019, and notified Johnson of the hearing.

In preparation for his defense, Johnson requested that the prison produce a copy of the envelope and document he allegedly sent his ex-wife, but the prison denied the request. Johnson also filed multiple motions to dismiss the disciplinary action.

At the disciplinary hearing, after Johnson's disciplinary report was read into the record, he entered a plea of not guilty. Johnson admitted sending the document to his ex-wife but claimed he was never informed that he could not contact her and argued that he was serving a legal document in the CINC proceeding. The hearing officer contacted a unit team member who informed the hearing officer that Johnson's journal entry of sentencing prohibited him from contacting the victim "in any way." It is not clear from the record if the unit team member's testimony was formally presented at the hearing or merely informally communicated to the hearing officer.

The hearing officer found Johnson guilty of violating K.A.R. 44-12-1002 and IMPP 21-106 by a preponderance of the evidence. The hearing officer made no findings regarding the content of Johnson's "counter-petition" or Johnson's intent in sending the document to his ex-wife. After finding a violation—apparently based solely on the contact between Johnson and his ex-wife—the hearing officer imposed a 20-day restriction-of-privileges sanction and a $5 fine. Johnson exhausted his administrative appeals, and the prison authorities affirmed the hearing officer's decision at every level.

On November 27, 2019, Johnson filed his K.S.A. 60-1501 petition for habeas corpus relief, raising multiple claims related to his disciplinary report, hearing, and sanctions. Several months later, the prison responded and moved to dismiss Johnson's petition. The district court held a nonevidentiary hearing before dismissing Johnson's petition.

The district court reasoned that Johnson did not need to mail his responsive pleading directly to his ex-wife:

> "The question is, you know, did Mr. Johnson, if he files a response in the CINC case is he, does he need to serve the victim in his underlying criminal case? No, he does not. He can file the pleading with the court, serve the appropriate attorneys who are representative of the parties in that case and he chose not to do that. He chose to I think perhaps being a little bit too cute by a half think well, I can also serve my ex-wife so I'm going to take advantage of that since we got a court case going, and I'm saying no, he should not have done that. He was convicted for doing that and that is a legitimate conviction on his D.R. I've read through the IMPP 21-206 I think it is, 21-106 and that doesn't provide him any relief, and he basically admitted the allegations in the DR so there is some evidence. He was not denied due process so I find that his petition needs to fail. The petition is dismissed."

In a subsequent journal entry, the court summarized its ruling from the bench and addressed Johnson's due process argument. The court concluded that the hearing officer did not violate the minimal due process standards by failing to rule on Johnson's motions to dismiss. The court noted that the prison provided Johnson with adequate notice of the hearing, the record did not reveal that Johnson wanted to present evidence, and the record did not reveal bias on the part of the hearing officer. Johnson appeals the district court's dismissal of his petition.

## DISCUSSION

Although Johnson raised several issues in his pro se habeas corpus petition below, on appeal he narrows those arguments and this court's review is further narrowed by applicable law. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (holding that issues raised in the district court but not briefed on appeal are waived and abandoned). "Disciplinary decisions concerning inmates in the custody of the State are generally not

subject to judicial review." *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016). However, Johnson can seek review of an alleged constitutional violation. 304 Kan. at 674. Here, Johnson claims the prison violated his constitutional due process rights during his disciplinary hearing and that the HCF policy prohibiting his contact with his victim infringed upon his free speech rights under the First Amendment to the United States Constitution.

*Johnson fails to show the prison violated his First Amendment rights.*

Johnson alleges, without explanation, that the prison violated his First Amendment rights by disciplining him for sending "legal mail to his ex-wife." Johnson does not explain how the type of mail implicates his First Amendment rights or any other constitutional protections. He further fails to explain whether he is making a facial or as-applied First Amendment challenge to the constitutionality of IMPP 21-106.

Johnson relies on cases analyzing prison policies that permit staff to open mail marked as legal correspondence addressed to an inmate outside the inmate's presence. Those cases are not analogous and provide little, if any, insight. The mail at issue in this case was outgoing, not incoming, and the record does not demonstrate that it was opened or read by the prison staff. Instead, the document was brought to the prison's attention when Johnson's ex-wife complained about it.

Johnson fails to make a successful facial First Amendment challenge demonstrating the policy is unconstitutional under any circumstances. See *State v. Ryce*, 303 Kan. 899, Syl. ¶ 4, 368 P.3d 342 (2016). An inmate has greater First Amendment protection in the contents of outgoing mail than incoming mail because the prison's security interests are more seriously implicated by incoming mail. However, the First Amendment protection afforded to an inmate's outgoing mail is not unlimited. *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).

Once incarcerated, an inmate loses liberties and privileges that are considered incompatible with incarceration. "[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003). Restrictions on an inmate's First Amendment associational rights in outgoing mail have been upheld when the restrictions relate to legitimate penological interests and the inmate has alternative means to exercise the asserted right. *Overton*, 539 U.S. at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 [1987]); *Thornburgh*, 490 U.S. at 414 (overruling prior standard for outgoing mail in favor of the *Turner* reasonableness standard).

Similar to the policy at issue here, federal courts have upheld prohibitions against inmates contacting persons who have requested no contact from an inmate. *Samford v. Dretke*, 562 F.3d 674, 680 (5th Cir. 2009) ("Prisons have a legitimate interest in protecting crime victims and their families from the unwanted communications of prisoners when a victim requests that the prison prevent such communication."); *Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992) ("[T]he government's interest in protecting the public from harassment by inmates would justify prohibiting an inmate from sending mail to persons who have affirmatively requested that mail not be received from an inmate."). The policy at issue in this case—IMPP 21-106—prohibits an inmate from contacting a victim of the inmate's crime unless the victim initiates contact first.

While Johnson vaguely implies that the application of this policy to legal communication somehow violates the First Amendment, he fails to cite any legal authority supporting that contention or make any argument in support of this implied assertion. Thus, Johnson has failed to show how this policy is facially unconstitutional.

Johnson's brief could be liberally construed as making an as-applied First Amendment challenge to the policy, contending that the policy applied to his legal mail in this situation violated his First Amendment rights. In his habeas corpus petition,

Johnson raised an argument that IMPP 21-106 violated his First Amendment rights because it did not exempt contact for legal purposes, such as filing for divorce. In his appellate brief, however, Johnson merely states that the policy at issue "prohibits inmates, particularly Johnson, from sending legal mail to those he needs to serve a pleading," and fails to cite any legal authority supporting this argument. In fact, Johnson fails to develop this argument in *any* manner, including factually, and he further fails to explain why his argument is sound despite the lack of supporting authority.

Johnson fails to support his conclusory allegation of a First Amendment violation with authority or argument. Johnson's bare First Amendment challenge, whether facial or as applied, is therefore abandoned and waived. See e.g., *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021); *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (finding that the court may treat arguments without supporting authority as waived or abandoned); Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36).

*Johnson fails to show that his due process rights were violated in the disciplinary hearing.*

When a prisoner claims a due process violation, they must first establish that state action has implicated a protected liberty or property interest. *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). This court has held, and the prison concedes, that a monetary fine imposed as a disciplinary sanction implicates a prisoner's due process rights. *Sauls v. McKune*, 45 Kan. App. 2d 915, 920, 260 P.3d 95 (2011); *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007) ("[T]he extraction of a fine implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution even when only a small amount has been taken from an inmate's account."). Therefore, this court finds that the prison's imposition of a monetary fine implicated Johnson's protected property interest, and he was therefore entitled to due process in his disciplinary hearing.

7

While Johnson is entitled to some level of due process before imposition of disciplinary sanctions, the procedural protections afforded to prison inmates is not as extensive as the procedural protections afforded to criminal defendants. *Superintendent v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); *Norwood v. Roberts*, 53 Kan. App. 2d 772, 772-73, 393 P.3d 169 (2017). In the prison disciplinary context, constitutional due process requirements "are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Sammons v. Simmons*, 267 Kan. 155, Syl. ¶ 3, 976 P.2d 505 (1999).

Johnson appears to argue that the procedures of the disciplinary hearing, and the HCF's failure to produce certain evidence, violated his due process rights. With regard to the evidence, Johnson alleges that he was unable to prepare a defense because, despite his request, he was not provided a copy of the letter or envelope he mailed to his ex-wife. Johnson does not explain, however, how this evidence could have helped his defense or changed the outcome of the hearing.

Although inmates' rights are limited in prison disciplinary proceedings, they are entitled to the opportunity to call witnesses and present documentary evidence when doing so is not "unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); see also K.A.R. 44-13-101(c) (entitling inmates, under specified parameters, to testify, call witnesses, present documentary evidence, and cross-examine witnesses). If the prison held the envelope and petition as evidence against Johnson, he was entitled to copies. See K.A.R. 44-13-101(c)(5). Unlike a request for witnesses, the administrative regulations do not require a specific procedure for requesting documents. See K.A.R. 44-13-306 (outlining the procedure for requesting witnesses). The record contains no explanation of why HCF refused to provide Johnson with the envelope or letter—or even a copy—and neither were introduced by the prison authorities at the hearing or included in the record on appeal. However, Johnson did not deny their existence or content.

8

Johnson was charged with wrongfully contacting the victim of his crime of conviction—his ex-wife—in violation of prison rules. Johnson never denied that he sent the letter and envelope to his ex-wife. Because he sent the letter and envelope, he knew the content of both, but nevertheless fails to identify a viable defense that he was prevented from asserting at the hearing because he lacked access to the letter and envelope. Although he argues that the letter constituted legal correspondence, he fails to explain how his lack of access to the letter and envelope inhibited his ability to make that argument.

Johnson also contends that the prison violated his procedural due process rights in the method and manner of conducting his hearing. Due process requires prison officials to provide: written notice of the charges to enable the inmate to prepare a defense, an impartial hearing, the opportunity for the inmate to call witnesses and present documentary evidence, and a written statement of the hearing officer on the facts and reasons for the decision. *Washington*, 37 Kan. App. 2d at 241 (citing *Wolff v. McDonnell*, 418 U.S. 539, 553-56, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974]; *Hogue*, 279 Kan. at 851).

Johnson received notice that he was charged with violating IMPP 21-106 11 days before his hearing. He does not challenge the impartiality of the hearing officer, but rather alleges that the hearing officer violated his due process rights by waking him and conducting the hearing just outside his cell before Johnson was dressed. Johnson cites no authority to support his conclusory assertion that the manner in which the hearing officer conducted his disciplinary hearing violated his due process rights. His argument merely consists of a restatement of the allegations within his habeas corpus petition and a bare conclusion that he was unable to present a defense.

Even assuming that the manner in which the disciplinary hearing was conducted or the HCF's failure to provide Johnson with the envelope and letter—or some combination of the two—somehow violated Johnson's due process rights, those violations would be

9

harmless. See *State v. Lloyd*, 308 Kan. 735, 740, 423 P.3d 517 (2018) (due process violation held harmless when court able to declare beyond a reasonable doubt that violation had little, if any, likelihood of changing the outcome of the disciplinary hearing). Johnson was charged with violating IMPP 21-106 by contacting his victim via letter, and he did not deny that contact. The hearing officer provided a written statement of the evidence and reasons for his decision. The location and timing of the hearing had no impact on the outcome. Moreover, Johnson has not explained how access to the envelope or letter would have aided his defense.

CONCLUSION

In his habeas corpus petition to the district court, Johnson asserted a battery of allegations of wrongdoing. On appeal, however, he has abandoned most of those claims. Instead, he argues only that the prison violated his constitutional due process and First Amendment rights. Neither of these arguments are well developed or supported by applicable legal authority. Moreover, the due process rights guaranteed an inmate in a disciplinary hearing are limited, and the prison afforded Johnson those limited procedural guarantees.

Affirmed.