NOT DESIGNATED FOR PUBLICATION

No. 128,717

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FREDERICK W. FRITZ,
*Appellant*,

v.

SAM CLINE, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Submitted without oral argument. Opinion filed October 24, 2025. Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Elizabeth Fowler*, legal counsel, of Kansas Department of Corrections, for appellee.

Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Frederick W. Fritz appeals the district court's decision to dismiss his K.S.A. 60-1501 petition and dissolve his writ of habeas corpus. In his petition, Fritz challenged his placement in administrative segregation while an inmate at the El Dorado Correctional Facility serving time for felony murder as well as several other crimes. The district court held two evidentiary hearings to consider Fritz' petition. After the first hearing, the district court partially dismissed the petition. Moreover, following the second hearing, the district court dissolved the writ and dismissed the case. Finding that the district court's decision was supported by substantial competent evidence and consistent with Kansas law, we affirm.

1

In 2010, Fritz pled no contest to felony murder, three counts of attempted first-degree murder, one count of aggravated robbery, and four counts of attempted aggravated robbery. Although he was originally sentenced to life imprisonment plus 652 months, his sentence was later reduced to a hard 20 life sentence plus 330 months. *State v. Fritz*, 299 Kan. 153, 153-54, 321 P.3d 763 (2014). At all times relevant to this appeal, Fritz was an inmate at the El Dorado Correctional Facility serving his sentence.

In July 2017, Fritz was placed in administrative segregation after helping another inmate attack a fellow prisoner. Following the attack, Fritz was reclassified as a security threat risk and as a member of a security threat group. As a result, he was placed into administrative segregation. The record reflects that Fritz did not challenge his placement in administrative segregation, nor did he participate in any reviews until nearly a year later.

Fritz later received an administrative segregation report—in May of 2019—alleging that he was directly involved in the orchestration of acts of violence on behalf of a security threat group—that act of violence, the record reveals, was allegedly ordering the murder of a prisoner housed at the Lansing Correctional Facility. The inmate—who was attacked—suffered multiple stab wounds resulting in serious injuries. Subsequently, Fritz' wife pled guilty to solicitation to commit capital murder in Leavenworth County. However, similar charges—filed against Fritz—were dismissed for lack of jurisdiction.

In October of 2020, Fritz filed the K.S.A. 60-1501 petition which is the subject of this appeal. In his petition, Fritz alleged—among other things—that his liberty interest was violated by his continued placement in administrative segregation. On April 26, 2021, the district court summarily denied Fritz' petition. But a panel of this court reversed and remanded this case to the district court to consider the duration of Fritz' placement in

administrative segregation in determining whether he could establish that the State had impaired his liberty interest without due process. *Fritz v. Cline*, No. 124,541, 2023 WL 325481, at *1, 6 (Kan. App. 2023) (unpublished opinion).

On remand, the district court followed the directions of this court and held two evidentiary hearings. At the first evidentiary hearing, the district court heard the testimony of the Administrator of Restrictive Housing at El Dorado Correctional Facility and the testimony of the Interstate Compact Coordinator Administrator for the Kansas Department of Corrections. In a journal entry filed on July 24, 2024, the district court partially dismissed Fritz' motion, finding that he failed to state a viable claim for habeas corpus relief in regard to his security threat group classification, his living conditions, his day-to-day activities, his ability to exercise, or his access to other prison services.

In reaching this conclusion, the district court made the following findings of fact:

"1. *STG Identification*. The pleadings, records, and exhibits in this case show that petitioner had been clearly identified for many years as a member of a Security Threat Group (STG), specifically the Aryan Brotherhood, a white [supremacist] group. His Aryan Brotherhood and hate group signs, communications, tattoos and his documented involvement in serious attacks with weapons on another inmate as a result of operations of the brotherhood, leave little doubt that his placement in restrictive housing is justified. Such behavior threatens the maintenance, security and safety of [the El Dorado Correctional Facility].

"2. *Cell conditions and day to day activities*. Fritz has a roommate of his own choosing, a telephone, the opportunity for frequent video visits with friends and family and significant access to personal and food items from the prison canteen in compliance with IMPP 12-120A. He also has television cable access to over forty sports, news and entertainment channels. Additionally, he has an iPad type electronic tablet for messaging, watching movies and playing games. He has reading materials, a fan, hot pot, cooking supplies, earphones and a cell window.

"3. *Exercise*. While the frequency of outdoor exercise is not to petitioner's liking, the records are clear that he does in fact have access to frequent outdoor exercise, subject sometimes to expectable weather conditions and/or staffing shortages. Evidence indicates that at other times he takes advantage of cell exercise packets and is able to remain physically active both in and out of his cell.

"4. *Access to other services*. The record reflects that Fritz has proper access to court, educational, commissary, library, social and counseling services."

Furthermore, the district court made the following conclusions of law:

"5. It is not until significant hardships occur such as denial of human contact, lack of any meaningful activity and exercise and indefinite confinement without frequent review that the line is crossed between acceptable restrictive segregation and atypical or significant hardship violative of constitutional or due process rights. Inmates do not have a constitutional right[] to dictate where they are housed, whether it is in which facility or which classification within a facility. Prison authorities are entitled to great deference in the internal operation and administration of the facility. *Bell v. Wolfish*, 441 U.S. 520, 547-548 (1979). It is only in the most extreme circumstances will a court intervene.

"6. Fritz also complains in a supplemental pleading of a cell search, claiming it was in retaliation to the dismissal of a Leavenworth habeas corpus case. The records indicate that a cell search turned up contraband items which were mixed in with legal documents in a manila envelope. The legal materials were returned after the contraband was sorted out and removed. The Leavenworth case was dismissed and it appears that his ability [to] defend the case was in no way compromised."

The district court also reserved "a final determination concerning dissolving the writ [once] the review hearing on the step-down program and out of state possibilities [had been held]."

On October 11, 2024, the district court held another evidentiary hearing to consider whether Fritz' "claim [regarding] his placement in segregation is indeterminate

4

and unacceptably extreme." At this hearing, the Administrator of Restrictive Housing at the El Dorado Correctional Facility testified about new disciplinary reports that Fritz received on August 25, 2024, and September 16, 2024. Both reports included an allegation that involved Fritz possessing dangerous contraband. Fritz was convicted of the allegations in both reports.

In an order filed on October 21, 2024, the district court dissolved the writ of habeas corpus and dismissed the K.S.A. 60-1501 petition. In doing so, the district court found that the step-down program—which Fritz was ineligible to participate in until March of 2025—and other prison programs were "appropriate and constitutionally acceptable methods [for inmates] to work themselves out [of] administrative confinement." Furthermore, the district court determined that based on the evidence presented, "the duration of . . . Fritz'[] confinement is not indeterminate or unacceptably extreme."

Thereafter, Fritz timely appealed.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in dismissing Fritz' K.S.A. 60-1501 petition. Under K.S.A. 60-1501(a), any person who is "detained, confined, or restrained of liberty" may petition for a writ of habeas corpus in the district court of the county where the person is constrained. Here, the district court dismissed the petition after conducting two evidentiary hearings. Following each hearing, the district court made findings of fact and conclusions of law in support of its decision. Accordingly, we review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

5

Evidence is substantial when a reasonable person would accept it as sufficient to support a legal conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). Similarly, our "'review of factual questions should accord a great deal of deference to the [district court's] determination, even in those instances where [we] might have decided the case differently.'" *Pyle v. Gall*, 317 Kan. 499, 502, 531 P.3d 1189 (2023). On the other hand, we review the district court's legal conclusions without deference to the district court. *Norwood v. Roberts*, 53 Kan. App. 2d 772, 775, 393 P.3d 169 (2017) (citing *Rice*, 278 Kan. at 320).

The United States Supreme Court has held that penal authorities are given great deference in how they manage and operate prison systems. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). And inmates do not receive "'the full panoply of rights [that] a defendant in [a criminal] proceeding[] does[.]'" *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). However, incarcerated individuals do retain a narrow range of protected liberty interests. *Jamerson v. Heimgartner*, 304 Kan. 678, 681, 372 P.3d 1236 (2016) (citing *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012).

An infringement of a protected liberty interest may occur when prison authorities "impose a restraint on a prisoner's already quite-limited freedom and the restraint is atypical and a significant hardship on the inmate in relation to the ordinary incidents of prison life." *Jamerson*, 304 Kan. at 681 (citing *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 [1995]). Generally, a mere change in the level of an inmate's security classification involving administrative segregation—within a prison—does not create a deprivation of one's liberty interest to support a legal challenge. *Jamerson*, 304 Kan. at 682; *Amos v. Nelson*, 260 Kan. 652, 666, 923 P.2d 1014 (1996).

Kansas appellate courts look at multiple factors when analyzing whether an institutional assignment of an inmate infringes on a protected liberty interest. These

6

include "the harshness of the conditions, such as deprivation of human contact and environmental and sensory stimuli; the duration of the confinement; and disqualification for parole consideration." *Jamerson*, 304 Kan. at 683 (citing *Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S. Ct. 2384, 162 L. Ed. 2d 174 [2005]). The duration of administrative segregation is considered when "assessing the hardship that segregated custody places on an inmate." *Jamerson*, 304 Kan. at 683.

Here, a review of the record on appeal reveals that the district court followed the directions given to it by this court when the case was previously remanded. *Fritz*, 2023 WL 325481, at *6. On remand, the district court held two evidentiary hearings. After the first hearing, the district court filed a journal entry explaining its decision that included both findings of fact and conclusions of law. Likewise, after the second hearing, the district court filed an order explaining its decision. In reviewing the district court's factual findings—set out in the district court's rulings—we find that substantial competent evidence supports the conclusions of law.

In particular, the record supports the finding that Fritz was identified as a member of a security threat group, that he has been involved in attacks on other inmates, and that his placement in administrative segregation is for the protection of prison staff as well as other inmates. There is also evidence in the record to support the findings that Fritz has a window in his cell, that he has access to a telephone, that he can receive virtual visits from family and friends, and that he has access to various personal items including an electronic tablet. Likewise, the record on appeal supports the findings that Fritz has access to the purchase of food from the prison canteen, that he has access to cable television, that he has access to outdoor exercise, that he has access to a variety of services—including educational and social services, and that he has access to the courts.

Regarding the duration of Fritz' administrative segregation, the record also supports the finding that the Department of Corrections had difficulty finding a suitable

out-of-state placement in light of his history as a security threat. Additionally, the record shows that—at the time the second evidentiary hearing was held—Fritz was not eligible to participate in the prison's step-down program until March 2025 as a result of recent disciplinary convictions. Consequently, we do not find the district court's factual findings to be erroneous.

Similarly, our review of the record on appeal reveals that the district court did not err in rendering its legal conclusions. Under the circumstances presented, it is reasonable to conclude that Fritz' placement in administrative segregation continues to serve a penological interest and that the duration of his placement is not extreme nor does it violate a liberty interest. See *Jamerson*, 304 Kan. at 685; *Grissom v. Roberts*, 902 F.3d 1162, 1169-72 (10th Cir. 2018) (solitary confinement of 23 to 24 hours a day did not infringe on a protected liberty interest); *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) ("'Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"). And as the record confirms, Fritz enjoys a number of accommodations in administrative segregation and he was approved for programs that—if successfully completed—would provide him with the opportunity to move out of administrative segregation.

Significantly, Fritz fails to show that his living conditions—in administrative segregation—are either unacceptable or worse than conditions of inmates in the general population. See *Jamerson*, 304 Kan. at 685. He also does not argue that his placement in administrative segregation impacted the duration of his confinement. Yet while Fritz suggests that his placement in administrative segregation is functionally indeterminate, we cannot overlook that he neglected to attend any of his segregation reviews between August 2017 to June 2018, that he received another disciplinary report in 2019, or that he received additional disciplinary reports on August 25, 2024, and September 16, 2024.

Fritz further admits that he does not always attend many of the monthly, six-month, and yearly segregation reviews—conducted by the prison. And because regular reviews are conducted as well as that Fritz has access to the step-down program, we do not find Fritz' administrative segregation to be indeterminate. See *Rezaq,* 677 F.3d at 1016. Certainly, Fritz has spent a substantial amount of time in administrative segregation. But based on the evidence presented to the district court, we agree that Fritz' continued placement in administrative segregation is not so extreme as to violate a protected liberty interest. Accordingly, we affirm the district court's decision.

Affirmed.