NOT DESIGNATED FOR PUBLICATION

No. 129,025

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JuJuan Gibson,
*Appellant*,

v.

Dan Schnurr, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; Daniel D. Gilligan, judge. Submitted without oral argument. Opinion filed November 26, 2025. Affirmed.

*Wendie C. Miller*, of Kechi, for appellant.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, for appellee.

Before Malone, P.J., Coble, J., and Sean M.A. Hatfield, District Judge, assigned.

Per Curiam: JuJuan Gibson, an inmate in the custody of the Kansas Department of Corrections, was working an offsite job when he was found to be in possession of a cellular phone. As a result, he was fired from the job assignment and found guilty of violating regulations related to job performance and unauthorized cellphone possession, culminating in prison sanctions. After the inmate disciplinary proceedings, Gibson filed a habeas petition under K.S.A. 60-1501 attacking the disciplinary convictions, which the district court summarily dismissed. He now appeals, arguing the district court erred in dismissing his claims that the prison's disciplinary hearing procedures violated his right

to due process. After thorough review of the record on appeal, we find no error and affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Gibson is an inmate residing in the Hutchinson Correctional Facility (HCF) who, during the relevant timeframe, worked at an offsite private industry job at "ADM-Grain." On February 29, 2024, another employee—who wished to remain anonymous—reported having seen a cellphone fall out of Gibson's pocket while at the jobsite. Soon thereafter, the ADM work site supervisor, Travis Davis, confronted Gibson, and asked Gibson to empty his pockets. Gibson revealed his prison-issued media player and explained that he was allowed to have the device. After contacting the prison unit team supervisor, Treva Koob, about the media player, Davis confiscated that device and Gibson resumed work.

Later in his shift, Gibson went to the restroom. Davis then showed the media player to the employee who had reported the cellphone to determine if the device was the one the employee saw fall out of Gibson's pocket. The employee said it was not. Once Gibson exited the restroom, Davis directed Gibson to sit in the office, went into the restroom to investigate, and discovered a cellphone in the ceiling tiles of the restroom. Ultimately, Davis determined that the cellphone was Gibson's, based on the other employee's report and because it was discovered just after Gibson had exited the restroom. This resulted in ADM terminating Gibson's employment.

The next day, Koob issued a disciplinary report to Gibson citing his violation of two regulations: (1) K.A.R. 44-12-211(b), possessing a cellphone, a class I violation; and (2) K.A.R. 44-12-401(b), work performance, a class II violation.

Although originally scheduled for March 12, a disciplinary hearing was held on March 13 and 15, 2024, to ensure Gibson's presence as well as the ability to secure

2

testimony from all witnesses. Prior to the hearing, Gibson asked to call Davis as a witness, which was apparently approved given Davis' testimony. Gibson, Koob, Davis, and Corporal Tirador—who transported Gibson back to prison on the date of the incident—testified.

Gibson pled not guilty to both violations. Although the hearing officer presented a picture of the confiscated cellphone as evidence, Gibson argued the device was a media player he was authorized to possess.

Gibson was allowed to cross-examine witnesses, such as asking Koob, "'Did Mr. Davis tell you he saw me with a score 5 media player?'" Koob stated that Davis had told her another employee saw the cellphone fall out of Gibson's pocket and that the employee reported this to Davis. Koob also testified that Davis told her that "he already had the [media] player with him when he found the phone." Koob's recollection fundamentally matched the other accounts in the record. The hearing officer then asked Koob to identify the employee who reported seeing the cellphone fall out of Gibson's pocket, but Koob replied that the employee wished to remain anonymous.

Gibson then presented the shakedown sheet completed by Tirador that listed only a media player on Gibson's person when he was transported and pointed out that the sheet listed no cellphone. To allow for testimony from Tirador, the hearing officer continued the March 13th hearing to two days later. At the continued hearing, the hearing officer asked Tirador why the shakedown sheet he completed did not list the cellphone, even though there was an evidence sheet with his name on it showing that he turned the cellphone in to Enforcement, Apprehension and Investigations. Tirador testified that the phone was handed to him by ADM staff, not Gibson, and the transporting officers also retrieved a media player.

3

Davis then testified. His testimony explained that—at some point—he showed the media player to the initially reporting employee and asked if they were sure it was not the media player that they observed fall out of Gibson's pocket. The employee told Davis that it "was definitely a cellphone." Davis clarified that he then showed the employee the cellphone that had been found in the bathroom, at which point the employee confirmed to Davis it was the phone that they had seen fall out of Gibson's pocket. Although this employee wished to remain anonymous, he did submit written testimony of what he observed, and that written testimony was noted in the hearing record.

Correction Supervisor I Williams was sworn in as Gibson's staff assistant, and the written testimony from the anonymous employee was presented to Williams. The hearing officer asked Williams whether the confidential witness testimony supported Davis' testimony, and Williams confirmed the two witnesses' testimonies matched. Gibson argued, "That wasn't my phone. I want to question the anonymous witness."

Gibson had no further comments and did not request further staff assistance. The hearing concluded with the hearing officer finding that, "based upon the preponderance of the evidence," including the confidential witness' testimony and the testimony of Davis, it was "more likely than not true" that "Gibson dropped a cell phone from his pocket while he was at his job assignment."

As a result, Gibson was fined $10 for the work performance violation. For the cellphone violation, he was sentenced to 15 days disciplinary segregation, with a suspended sentence of 120 days, and 60 days restriction.

In April 2024, Gibson appealed this disposition. His appeal was denied by the Secretary of Corrections in May 2024, finding the facility substantially complied with its procedures and the hearing officer's decision was based on some evidence.

In June 2024, Gibson filed a habeas corpus petition with the trial court against Dan Schnurr, the warden of HCF, alleging that the hearing officer violated Gibson's federal and state constitutional rights and state statutory rights. Gibson contended that there was insufficient evidence to convict him of a disciplinary violation and that the hearing officer was not fair and impartial. On August 20, 2024, the district court summarily dismissed the matter citing Gibson's failure to include with his petition proof of his exhaustion of administrative remedies.

Gibson filed a motion asking the court to amend its findings and its judgment under K.S.A. 60-252(b), and K.S.A. 60-259(f), asking the district court to reconsider its finding that he did not exhaust his administrative remedies because his petition "contained both a statement of full exhaustion and attached proof of exhaustion." The district court granted the motion "to the degree that the Petition . . . is considered on its merits."

In its consideration of the merits, the district court found that there was some evidence to support the disciplinary authority's conclusion and "there is no shocking and intolerable conduct of a constitutional stature." The district court found dismissal to be proper on the face of the petition.

Gibson filed his notice of appeal within 30 days after this decision.

ANALYSIS

*Gibson's Claim Is Properly Before This Court*

As a threshold issue, Schnurr argues that this court lacks jurisdiction to hear the matter because Gibson filed his notice of appeal six months after the district court dismissed his petition. Schnurr asserts that Gibson's posttrial motions did not toll the 30-

day window to file a notice of appeal and that Gibson's window to file his appeal commenced on August 20, 2024. We find Schnurr's argument unpersuasive.

The right to appeal is statutory and is not contained in the United States or Kansas Constitutions. So, appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021).

Under the general civil appeal statute, an appellant may toll the 30-day deadline to take an appeal from a district court by filing a timely postjudgment motion (i.e., filed within 28 days of entry of judgment). See K.S.A. 2024 Supp. 60-2103(a). Habeas proceedings "are deemed to be civil matters, [therefore] the movant has 30 days from the entry of judgment to file a notice of appeal." *State v. Swafford*, 306 Kan. 537, 540, 394 P.3d 1188 (2017) (applying a habeas posttrial motion analysis to an illegal sentence issue).

Our Supreme Court in *Swafford* clarified that "[a] motion for additional findings of fact under [K.S.A. 60-252] or a motion for a rehearing under [K.S.A. 60-259] are timely if filed within 28 days, and the effect of such timely filed motions is to toll the time for filing an appeal." 306 Kan. at 540. So, in a habeas proceeding, a timely posttrial motion stops the appeal time from running. The time starts running again in its entirety on the date of entry of the order ruling on the posttrial motion. K.S.A. 2024 Supp. 60-2103(a).

K.S.A. 2024 Supp. 60-2103(a) permits only specific types of timely posttrial motions to extend the time to appeal, including:  (1) motions to amend or make additional findings of fact under K.S.A. 2024 Supp. 60-252(b); and (2) motions to alter or amend the judgment under K.S.A. 2024 Supp. 60-259(f).

Gibson filed his motions under these very subsections asking the district court to amend its findings in writing on August 30, 2024, which was 10 days postjudgment. Gibson's posttrial motions were thus timely and tolled his appeal time under K.S.A. 2024 Supp. 60-2103(a). The district court granted in part those motions and ultimately dismissed the petition, filing its final judgment on January 31, 2025. Gibson filed his notice of appeal on February 20, 2025, which was within the 30 days required by statute. See K.S.A. 2024 Supp. 60-2103(a).

Schnurr cites *Denney v. Norwood*, 315 Kan. 163, 170, 505 P.3d 730 (2022) to argue that inmate habeas corpus cases are not entitled to the full panoply of civil procedure. In *Denney*, our Supreme Court held that neither the failure-to-state-a-claim standard under K.S.A. 2020 Supp. 60-212(b)(6), nor the summary judgment standard of K.S.A. 2020 Supp. 60-256, applied when evaluating a motion to summarily dismiss a petition for habeas corpus under K.S.A. 60-1501. 315 Kan. at 171. But as Gibson correctly points out, *Denney* does not mention, let alone consider K.S.A. 60-252(b) or K.S.A. 60-259(f) and the motions' relationship to a timely appeal.

Schnurr also cites *Board of Sedgwick County Comm'rs v. City of Park City*, 41 Kan. App. 2d 646, 204 P.3d 648 (2009) in support of his jurisdiction argument. But that case decided whether an *untimely* motion tolled the 30-day period to file a notice of appeal. Neither this case nor *Denney* provide support for Schnurr's proposition.

Because Gibson timely filed his postjudgment motions, which tolled the time for his appeal, and filed his appeal within 30 days of the district court's final ruling on his postjudgment motions as clearly provided under K.S.A. 2024 Supp. 60-2103(a), this matter is properly before this court.

*Legal Standards Applicable to K.S.A. 60-1501 Petitions*

K.S.A. 60-1501(a) allows "any person" confined in Kansas to prosecute a writ of habeas corpus in the county in which such restraint is taking place. *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). Because the district court summarily dismissed Gibson's petition filed under K.S.A. 60-1501, we must examine whether that summary dismissal was appropriate.

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." 289 Kan. at 648. If, on its face however, the petition shows that the petitioner "is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49. An appellate court exercises de novo review of a summary dismissal. 289 Kan. at 649.

As demonstrated in the statutory language, two alternative bases exist for claims under K.S.A. 60-1501. First, an inmate may claim shocking and intolerable conduct which stems from the "Fourteenth Amendment to the United States Constitution, which prohibits the states from depriving persons of 'life, liberty, or property, without due process of law.'" 289 Kan. at 649. Second, the petitioner may claim continuing mistreatment of a constitutional stature. 289 Kan. at 649.

Here, Gibson makes no claim under the second basis of K.S.A. 60-1501 for continuing mistreatment. He presents only claims of shocking and intolerable conduct violating his constitutional rights to due process. Gibson contends that the prison disciplinary authorities violated his constitutional rights in a myriad of ways. He argues the authorities considered documentary evidence and testimony outside of his presence,

appointed Williams as a staff assistant despite a conflict of duties as another hearing officer, denied Gibson his right to question the anonymous witness, and denied Gibson the right to call witnesses, and the hearing officer failed to remain fair and impartial. We examine these criticisms under the standards for reviewing due process claims.

*Gibson's Work Performance Violation Claim Is the Only One Implicating Due Process*

When considering whether a procedural due process claim has been stated, the court applies a two-step analysis. First, we must determine whether the inmate was deprived of life, liberty, or property. If so, we then decide the extent and nature of the procedural process the inmate is due. The question of whether an individual's constitutional rights have been violated is a question of law over which an appellate court exercises unlimited review. *Johnson*, 289 Kan. at 649.

As to the first step, we consider whether Gibson had a liberty or property interest at stake. Here, Gibson was fined $10 for the work performance violation under K.A.R. 44-12-401(b). He was also given 15 days disciplinary segregation, suspended for 120 days, and 60 days restriction from privileges for possessing a cellphone under K.A.R. 44-12-211(b).

Our court has found that a fine, even if small, taken from an inmate's prison account implicates the Due Process Clause. *Anderson v. McKune*, 23 Kan. App. 2d 803, 807, 937 P.2d 16 (1997). Gibson was assessed a fine for the work performance violation; so his claim on that violation asserted the deprivation of a constitutional right, and it was proper for the district court to consider that claim. Schnurr does not dispute that.

As for Gibson's appeal of the cellphone violation, Schnurr argues that Gibson does not have a protected liberty interest in his housing location. Schnurr relies on *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265 (1997), which held that "30 days' loss of

9

privileges does not constitute an atypical and significant hardship for purposes of a due process analysis." Gibson counters by offering caselaw that states the rule that the State can create a liberty interest protected through the Due Process Clause by its enactment of certain statutory or regulatory measures. However, Gibson fails to provide any information or argument analyzing the second part of that test, and his argument is abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (a point raised incidentally in a brief and not argued therein is deemed waived or abandoned).

In *Ramirez*, our court used the test outlined in *Amos v. Nelson*, 260 Kan. 652, 666, 923 P.2d 1014 (1996), which explained that the threshold assessment for due process violations is "'whether the state laws and regulations structuring the authority of prison officials contain language of an unmistakably mandatory character requiring that certain procedures must be employed and that punishment will not occur absent specified substantive predicates.'" *Ramirez*, 23 Kan. App. 2d 447. The second part of the test laid out in *Amos* requires a court to then determine whether the discipline imposed "a significant and atypical hardship on the [inmate] which was not contemplated within the realm of conditions of the original sentence." 260 Kan. at 666. *Ramirez* found that 30 days did not rise to that standard. 23 Kan. App. 2d 447. In line with the analysis in *Ramirez*, even if Gibson meets the first step of the *Amos* test, his 15-day disciplinary segregation does not rise to a "significant and atypical hardship" and, as a result, does not constitute a protected liberty interest which would support his due process claim.

Gibson's 15-day disciplinary segregation for the cellphone violation does not implicate a deprivation of liberty or property entitled to due process, so he is not entitled to relief on this basis. For this reason, the district court correctly dismissed the habeas petition regarding Gibson's cellphone violation, even if for the wrong reason.

On the other hand, Gibson has shown a property interest by way of the $10 fine assessed on the work performance violation of K.A.R. 44-12-401(b) and is entitled to

have the due process he was accorded on that disciplinary conviction reviewed. See *Johnson*, 289 Kan. at 649. We continue, then, to examine whether Gibson's claims relating to that violation were properly dismissed.

*The District Court Did Not Err by Summarily Dismissing Gibson's Petition*

Gibson claims he was denied due process during the disciplinary proceedings on multiple bases. As described above, he alleges that the disciplinary report did not give adequate notice of the charges or evidence; a confidential witness was not identified or made available for cross-examination; testimony and documents were obtained outside his presence; the hearing officer had a conflict of interest; the required procedures for reports were not followed; and the evidence was insufficient to support a finding of guilt. To decide whether his allegations have merit, we must apply additional legal principles to his claim.

An appellate court reviews a trial court's decision on a K.S.A. 60-1501 petition to determine whether the trial court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. The trial court's conclusions of law are subject to de novo review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004). We must accept Gibson's alleged facts and all inferences as true. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240, 152 P.3d 660 (2007).

The issue of whether due process exists is a question of law, and as a result, appellate review is unlimited. *Anderson*, 23 Kan. App. 2d at 807. An inmate claiming violation of his constitutional rights in a habeas corpus proceeding carries the burden of proof. *Sammons v. Simmons*, 267 Kan. 155, 158, 976 P.2d 505 (1999).

Because institutional needs and objectives must be balanced against the rights of the inmate in a prison disciplinary proceeding, "'the full panoply of rights due a defendant

in [criminal] proceedings does not apply.'" *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). To ensure due process, the disciplinary hearing process must include all of the following four procedures: "an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence." *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 [1974] as "the benchmark case defining what process is required for prison disciplinary proceedings").

Gibson was accused of violating K.A.R. 44-12-401(b), which requires an inmate to perform his assigned work as required by his supervisor and allows violations of the regulation to be handled according to the summary disposition procedure found in K.A.R. 44-13-201b. It must be acknowledged, though, that the facts underlying Gibson's work violation and the facts underlying his cellphone violation are one and the same, so we will address all evidence together.

Each of Gibson's claims are addressed within the due process framework recognized in *Pierpoint*, 271 Kan. at 627, and through that context, we examine whether the four required procedures were undertaken.

1. *Written notice of the charges to enable Gibson to prepare a defense*

We first address whether Gibson was provided with appropriate written notice of the charges. He argues the disciplinary report failed to provide sufficient information and adequate notice for him to prepare a defense.

In pertinent part, K.A.R. 44-13-201, the regulation governing disciplinary reports and written notice, provides:

12

"(d) The disciplinary report shall constitute a formal statement of the charge, shall be in a form prescribed by the secretary, and shall include the following:

. . . .

(6) the nature of the alleged offense;

. . . .

(9) the names of known staff witnesses;

(10) a brief description of the circumstances and facts of the violation if, in cases in which the violation is based upon information supplied by a confidential witness or informant, the identity of the witness or informant is not disclosed, nor is any reference or factual detail likely to reveal the identity of the witness or informant."

Gibson's disciplinary report was signed by Koob and stated:

"I received a phone call and an email on 2/29/2024 approx 11:30 AM that Gibson was found with a cell phone at his private industry job. He was transported by SST [Special Security Team] to RHU [Restricted Housing Unit]. He is fired from his job at ADM-Grain. See attached email[.]"

The disciplinary report referenced an email from ADM to Koob which read: "On 2-29-24 at 9:30am, an employee was working along side Resident Gibson when a cell phone fell out of his pocket. And [*sic*] investigation was done and the cell phone was found. He is terminated from our employment."

Gibson maintains that he was denied a copy of that email until he received it, along with other documents, with the results of his appeal from the Secretary of Corrections. Gibson argues that he was not provided with adequate notice because he was never given the location where he was allegedly observed with the cellphone, the approximate time he was observed, who discovered the cellphone in the restroom, or in which restroom the phone was discovered. Gibson's argument is misguided, however. The type of notice required is not complete notice, but simply enough written notice of the charges which would allow him to prepare a defense.

13

Gibson relies on *Swafford v. McKune*, 46 Kan. App. 2d 325, 329, 263 P.3d 791 (2011). There, our court noted that the disciplinary report "clearly identifie[d] the regulations which Swafford was accused of violating [and] concisely summarize[d] the facts alleged by the prison officers in support of the charges." The report in *Swafford* also included a summary of the officers' observation of a surveillance camera, and the court found that the disciplinary report gave Swafford adequate notice of the nature of the charges so that he could prepare a defense. 46 Kan. App. 2d at 329.

*Swafford* cuts against Gibson's claims. In line with *Swafford*, we emphasize that a disciplinary report does not need to *detail the evidence* against an inmate. Rather, it need only afford "'adequate notice of the nature of the charges.'" See *Bruhn v. Heimgartner*, No. 112,699, 2015 WL 3875395, at *4 (Kan. App. 2015) (unpublished opinion) (citing *Swafford*, 46 Kan. App. 2d at 329).

Here, Gibson's disciplinary report stated that a prison official was notified via phone and email and that Gibson was found with a cellphone at work and was fired, which is a concise summary of the facts alleged in support of the charges. The disciplinary report also clearly identified the two regulations Gibson was accused of violating. We have no difficulty finding that Gibson had adequate notice of the charges.

Related to this point, Gibson further argues that the disciplinary report must be written by the observing person. He provides no authority for this contention. *Meggerson*, 312 Kan. at 246 (Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue.). Gibson maintains that Koob had no personal knowledge of events because she was not at the place of employment when the events occurred. But that argument is unconvincing. As far as the work performance violation is concerned, Koob does have personal knowledge as she was the person who was directly contacted by ADM about Gibson's acts via email and phone.

2. *A written statement of the findings by the fact-finders as to the evidence and the reasons for the decision*

Because Gibson does not address this specific point on appeal, we review it cursorily while acknowledging it is part of his overall due process rights. K.A.R. 44-13-502a states the requirements of the hearing report. This report must contain a recitation of the evidence the hearing officer relied upon and a summary statement of the reasons for the disciplinary action, which may be shown through a disciplinary report if it adequately shows the reason for the disciplinary action. See *Shepherd v. Davies*, 14 Kan. App. 2d 333, 339, 789 P.2d 1190 (1990).

In *Shepherd*, the court considered a report that listed the reason for the disciplinary action in one sentence: "'Guilty due to testimony was clear and convincing.'" 14 Kan. App. 2d at 339. The *Shepherd* court explained that

> "while the statement of reasons may be brief and need not reach the complexity or length of judicial findings of fact and conclusions of law or analyze every argument raised, it must at least be sufficient to show on review that the decision was not arbitrarily reached and to protect against collateral consequences." 14 Kan. App. 2d at 339.

The court clarified that a complex case requires more and that a mere conclusion that the inmate is guilty will not satisfy the due process requirement. 14 Kan. App. 2d at 339. Ultimately, that court held that the inmate presented a substantial due process claim which could not be dismissed without a hearing. 14 Kan. App. 2d at 339-40.

Here, the "Disposition and Hearing Record" includes that Gibson and Koob (as reporting officer) each testified on the first day of the hearing. When it became evident through Gibson's testimony that the shakedown sheet showed that Gibson only had the media player on his person when he was being transported back to the prison from the workplace, the hearing officer continued the hearing to allow for Tirador—the signor of

15

the shakedown sheet and the evidence sheet with the cellphone on it—to testify regarding the apparent discrepancy in the physical evidence. The continuance was also necessary to allow for the testimony of Davis. The record contains summaries of testimony and documents showing that Gibson was provided a staff assistant to review the anonymous witness' testimony. At the conclusion of the record, it clearly outlines the hearing officer's findings:

> "BASED UPON THE PREPONDERANCE OF THE EVIDENCE IN WHICH THE CONFIDENTIAL WITNESS TESTIMONY, THE TESTIMONY OF ADM SUPERVISOR DAVIS AND THE EVIDENCE SUPPORT THE CHARGES, IN THE HEARING OFFICERS OPINION GIBSON DROPPED A CELL PHONE FROM HIS POCKET WHILE HE WAS AT HIS JOB ASSIGNMENT, IT IS MORE LIKELY THAN NOT TRUE THE INCIDENT DID HAPPEN AND THE FOLLOWING SANCTIONS WERE IMPOSED."

On its face, the record points out the essential testimony and facts upon which the hearing officer's inferences were based, outlined the evidence the reporting officer relied on, and provided an indication of why the hearing officer found it more likely than not that Gibson had a cellphone—namely, because all witnesses' testimony, except Gibson's, was consistent. Although we tend to believe the hearing record was sufficient, we again note that Gibson does not challenge the sufficiency of the statement of reasons contained in the hearing record. We do not act as advocates to create arguments on an appellant's behalf, nor do we raise issues sua sponte. *State v. Laborde*, 303 Kan. 1, 7, 360 P.3d 1080 (2015) ("As a general rule, unless there are exceptional circumstances, appellate courts do not consider issues on appeal that were not raised by the parties."). Any arguments not presented on this point are considered waived. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

### 3. *Opportunity to call witnesses and present documentary evidence*

On this issue, Gibson's argument somewhat mirrors his notice argument. Gibson claims he was denied due process because he was never told the anonymous witness' identity, which in turn denied him the opportunity to call witnesses at his hearing. As discussed above, the requirement is adequate notice of the nature of the *charges*, not evidence. On one hand, Gibson further alleges that the confidential witness was a prison staff member, and not an inmate, violating K.A.R. 44-13-201(d)(9), which requires that a disciplinary report shall include "the names of known *staff* witnesses." (Emphasis added.) But in another area of his brief, Gibson acknowledges the witness was a "private citizen," and K.A.R. 44-13-201(d)(9) does not require the disclosure of the identity of private citizen witnesses—only staff members must be disclosed.

We reject Gibson's summary contention that the name of the witness must have been disclosed because it is unsupported by any authority or otherwise properly briefed. See *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in face of contrary authority is akin to failing to brief issue). Even if we entertained his conclusory argument, we emphasize that K.A.R. 44-13-201(d)(10) requires that when there is a confidential witness, their identity is not disclosed, nor "is any reference or factual detail likely to reveal the identity of the witness or informant."

As part of his evidentiary arguments related to the anonymous witness, Gibson argues that he first learned of the confidential testimony at the hearing and specifically asked the hearing officer to allow him to "'question the anonymous witness.'" Because he was denied that opportunity, Gibson claims he was deprived of the chance to confront and cross-examine the confidential witness. But *Pierpoint* defined process requirements for disciplinary proceedings, which includes "the opportunity to call witnesses" but does

17

"not require the right to confront and cross-examine witnesses." 271 Kan. at 627-28 (citing *Wolff*, 418 U.S. at 567-68).

The relevant regulations give the hearing officer some discretion about these matters. K.A.R. 44-13-101(c) provides that an inmate's right to call witnesses, confront and cross-examine witnesses, and present documentary evidence is subject to certain limitations. However:

> "The hearing officer shall have broad discretion in permitting or denying the witness request. In exercising the discretion, the hearing officer shall balance the inmate's request and wishes against the needs of the facility. The goal of the hearing officer shall be to conduct the fact-finding process in a manner leading to the discovery of the truth." K.A.R. 44-13-405a(b).

And although K.A.R. 44-13-101(c)(6) generally provides that an inmate has a right to confront and cross-examine opposing witnesses, that right is "[s]ubject to the limitations and guidelines set out in these regulations and subject to the control of the hearing officer exercised within the parameters of the law and these regulations." K.A.R. 44-13-101(c).

K.A.R. 44-13-408(a)(4) outlines that if the hearing officer finds that testimony or other evidence will be given, either directly or indirectly, by a confidential witness, the hearing officer shall appoint a staff member to act as staff assistant to aid the inmate at the disciplinary hearing and to question relevant witnesses. The hearing officer complied with this regulation by appointing Williams to review the written testimony of the anonymous reporting employee and testify regarding that written, confidential testimony. Williams then testified during the hearing with Gibson attending, so Gibson's claim that he was entirely unable to review the testimony of the anonymous witness has no support in the record on appeal.

Moreover, K.A.R. 44-13-403(q) contains an exception that states: "Confrontation and cross-examination *may* be denied by the hearing officer if deemed necessary in any case except class I cases." (Emphasis added.) *Leek v. Brown*, 62 Kan. App. 2d 599, 610, 518 P.3d 1257 (2022). Here, Gibson's work performance charge was not a class I case, but is a class II case, therefore, the hearing officer was allowed to deny Gibson's request to question the confidential witness and an explanation was not required. Still, the record does provide an explanation—that the witness "'wished to remain anonymous.'" Gibson thus fails to show that the hearing officer's acts violated a relevant regulation.

The record shows that Gibson had the opportunity to call witnesses and present documentary evidence at the disciplinary hearing. The hearing officer continued the hearing, which allowed Tirador, Davis, and the staff assistant, Williams, to testify. Gibson cross-examined Koob, and it appears that he did not take full advantage of the opportunity to similarly cross-examine Tirador or Williams. Gibson submitted a "Resident Request for Witness" form seeking Davis' testimony, and the hearing officer permitted Davis to testify. Nothing in the record indicates that Gibson was not provided with a reasonable opportunity to cross-examine the witnesses who brought the charges against him, to call witnesses on his own behalf, or to present evidence at the disciplinary hearing.

4. *Fair and impartial hearing*

The final due process requirement owed to Gibson was a fair and impartial hearing. Gibson contends that he was denied a fair and impartial hearing in a few ways. First, he claims that the hearing officer advocated against him, by calling and questioning Koob, and by failing to challenge that the confidential witness was "not in fact a confidential informant." At the same time, Gibson cites K.A.R. 44-13-403 which contradicts his argument:

19

"(l)(1) The disciplinary process shall, to the extent possible, discover the truth regarding charges against the inmate. For this purpose, the hearing officer shall be authorized to *call and to interrogate* any witness, and each inmate, staff member, volunteer, or contract employee called as a witness by the hearing officer shall be compelled to appear. The hearing officer may bring out the facts by direct or cross-examination but shall not act as prosecutor on behalf of the facility or charging officer against the accused inmate, or on behalf of the inmate. Testimony and evidence shall not be received by the hearing officer or introduced outside the presence of the accused inmate, except that the accused inmate shall not be present when the hearing officer reviews any facility security videotape evidence." (Emphasis added.)

Given the regulation's clear authorization to a hearing officer to call and interrogate witnesses, nothing in the record shows that the hearing officer acted outside his or her scope of authority. As for whether the hearing officer handled the confidential witness testimony appropriately, the officer reviewed the written testimony and, because Gibson was not entitled to review the written testimony, appointed a staff witness to review the confidential testimony and testify accordingly as outlined in K.A.R. 44-13-408(a)(4). The record reflects that the hearing officer complied with the applicable regulations as to the confidential witness.

In a related vein, Gibson argues that the hearing officer considered documentary evidence and testimony outside of his presence—namely, that of the confidential witness. As addressed above in our discussion of the right to confront and cross-examine witnesses, Gibson's work performance charge was not a class I case, but a class II case, so the hearing officer was allowed to deny Gibson's request to question the confidential witness and an explanation was not required. See *Leek*, 62 Kan. App. 2d at 610. Even so, the hearing officer acted appropriately by appointing a staff member to assist Gibson as required under K.A.R. 44-13-408(a)(4).

To promote his argument, Gibson relies on this court's acknowledgment in *Bruhn* that held that "prison officials' failure to disclose materially exculpatory evidence in a prison disciplinary proceeding violated the inmate's due process rights and was not harmless error." 2015 WL 3875395, at *5 (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 [7th Cir. 1981]). Gibson claims that the confidential witness' responses to his questions would have been exculpatory had Gibson been able to question the witness.

The *Bruhn* panel, however, also acknowledged the case of *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 814 n.4 (10th Cir. 2007), which stated it was unnecessary to decide whether to follow the Seventh Circuit's rule requiring disclosure of exculpatory evidence in prison disciplinary proceedings unless it threatens institutional interests. *Bruhn*, 2015 WL 3875395, at *5. The latter part is relevant here. The entire purpose for an informant or anonymous witness to remain confidential is discussed in K.A.R. 44-13-403(m)(1), stating:

> "If the hearing officer determines that the testimony of any inmate will subject that inmate to possible retaliation for having testified, the hearing officer may perform either of the following:
>
> (A) Receive the testimony in confidence without confrontation or cross-examination by the accused inmate, and the witness may be sequestered; or
>
> (B) receive testimony from an investigator who interviewed an inmate informant and relied on the confidential information provided."

K.A.R. 44-13-403(m)(3)(B) provides that if the informant does not testify, the hearing officer may establish the reliability of the information provided to the testifying investigator by, among other methods, securing the testimony of the investigator regarding the truthfulness of details the investigator has been able to verify through investigation. See *Wright v. State*, No. 90,630, 2004 WL 794486, at *3 (Kan. App. 2004) (unpublished opinion) (finding the hearing officer properly verified the reliability of the informant testimony).

21

Here, although the confidential witness did not testify, the reliability of the information provided was established by Williams' testimony and its corroboration by Davis' testimony. The hearing report noted that Williams was presented with the testimony and evidence and testified under oath that the confidential witness' testimony supported Davis' testimony. The hearing officer properly verified the reliability of the confidential witness.

In Gibson's final substantive argument as to the anonymous witness, he maintains that Williams, acting as a staff assistant, never challenged the alleged confidential witness' testimony, nor was the written testimony notarized. As a result, Gibson contends this somehow violated his right to call witnesses. The record on appeal does not show whether the testimony was notarized, nor does Gibson provide authority for his claim that the testimony must be notarized, which is akin to not briefing the issue and abandoning the claim. *Meggerson*, 312 Kan. at 246. As found above, the hearing officer properly appointed the staff assistant to handle matters related to the confidential witness. See K.A.R. 44-13-408(a)(4).

Gibson cites K.A.R. 44-13-403(l)(1) in support of his argument, which discusses the disciplinary process generally. But another specific subsection of this regulation addresses the staff assistant's role and permitted procedures:

> "The accused shall be apprised of the general nature of the confidential testimony, omitting those details that would tend to identify the inmate who gave the confidential testimony or provided confidential information to the testifying investigator. The identity of any confidential witness or of any inmate informant shall not be disclosed to the accused, to any other inmate, or to any staff not required to complete the process. The staff assistant shall be permitted to be present when the board receives testimony from the confidential witness, or investigator, and the staff assistant *may* ask questions. The inmate's staff assistant shall not disclose the identity of the confidential witness or inmate informant to the accused, to any other inmate, or to any staff not required to

22

complete the hearing process. The testimony shall be recorded for confidential review by the warden and, on appeal, by the secretary of corrections." (Emphasis added.) K.A.R. 44-13-403(m)(4).

In compliance with this regulation, Williams appeared and provided testimony. The regulation states that Williams *may* ask questions but *shall not* disclose the confidential witness' identity. Nothing in the record suggests whether Williams questioned the witness, or that there was anything further that Williams needed to ask in addition to the written testimony of the confidential witness. In any event, Williams was not required to ask questions of the confidential witness. Also, the hearing summary stated that Gibson had no further comments and did not request other staff assistance.

Although the information Gibson received regarding the nature of the testimony against him was very general, or the staff assistant may not have questioned the witness, Gibson fails to establish that this alleged failure of the prison officials to follow their own rules denied him due process. In *Anderson*, this court held:

"The mere fact that a hearing officer in a prison discipline case has not followed [Department of Corrections] procedural regulations does not of itself violate fundamental fairness that rises to an unconstitutional level. Without much more, a petition for habeas corpus alleging procedural errors at a prison disciplinary hearing must fail. As a general rule, prison officials are given flexibility in executing internal prison policies and procedures which are designed to preserve internal order and discipline." 23 Kan. App. 2d at 811.

Gibson was informed of the general nature of the testimony against him before the disciplinary hearing, and the staff assistant reviewed the testimony and was present at the hearing. Under these circumstances, Gibson fails to show that his constitutional rights were violated.

23

Gibson also alleges that Williams was another hearing officer, which created a conflict of interest. Schnurr admits that Williams acts as a hearing officer but was not acting as such in this case. Gibson provides no authority for his contention that this somehow creates a conflict of interest barring Williams' appointment, and his conclusory allegation lacks merit.

In summary, Gibson's disciplinary hearing procedures included an impartial hearing, a sufficient written notice of the charges to enable him to prepare a defense, and the opportunity to call witnesses and present documentary evidence, and he fails to challenge the written statement of findings by the hearing officer. Gibson has demonstrated no error in the disciplinary hearing procedures which would amount to a due process violation.

*Sufficient Evidence*

Finally, Gibson contends there was insufficient evidence to convict him of a disciplinary violation because the hearing officer relied on the improper use of confidential witness testimony. When reviewing habeas petitions, we must determine whether "some evidence" supports the decision by the prison disciplinary board. *Miller v. McKune*, 38 Kan. App. 2d 810, 814, 174 P.3d 891 (2006). It is unnecessary to reexamine the entire record, make an independent assessment of the credibility of witnesses, or reweigh the evidence, and we afford broad deference to prison officials who maintain discipline in prison settings. *Sammons*, 267 Kan. at 158; *Anderson*, 23 Kan. App. 2d at 807-08. Due process does not require that the evidence preclude other possible outcomes, only that the evidence supports the conclusion reached by the disciplinary authority. *May v. Cline*, 304 Kan. 671, Syl. ¶ 1, 372 P.3d 1242 (2016).

The standard is whether some evidence supports the hearing officer's finding. The evidence supporting the two violations is overlapping, and regardless of which act led to

24

which violation, the "some evidence" standard is easily reached. Even under a criminal law measure, a conviction may be supported by both direct and circumstantial evidence. See *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025) (circumstantial evidence will support a conviction for even the gravest of offenses). Here, a witness who provided written, even if confidential, testimony saw Gibson possessing a cellphone and a cellphone was found hidden in a restroom Gibson had just exited. The evidence supporting Gibson's conviction of a work performance violation includes the testimony of the work supervisor, the reporting officer, and Tirador; the disciplinary report, and the fact that Gibson lost his job. The district court correctly held that some evidence supported the hearing officer's findings. Gibson is not entitled to relief on his sufficiency argument, and we find no violation of his due process rights due to insufficient evidence.

Affirmed.